Opinion issued May 20, 2010
















In The
Court of Appeals
For The
First District of Texas




NO. 01-09-00001-CV
____________

IN RE RONALD JAMES SANNER, Relator




Original Proceeding on Petition for Writ of Habeas Corpus 




MEMORANDUM OPINION
          Relator, Ronald James Sanner (“Ron”), requests habeas corpus relief from the
trial court’s December 17, 2008 enforcement order. We grant habeas corpus relief
in part and deny it in part. BACKGROUND
          By a 2003 agreed final decree, the trial court dissolved the marriage of Ron and 
real party in interest, Sheri Dooley (“Sheri”). The trial court appointed Ron and Sheri
joint managing conservators of their four-year-old son (“the child”) and established
orders providing regulation of the parties’ relation with the child in areas of support,
access, and parental rights and duties. Over the next several years, discord arose
between the parties, generally related to the child’s medical care, and specifically
related to whether he had attention deficit disorder (“ADD”), attention deficit
hyperactivity disorder (“ADHD”), or some other condition requiring medication.
          On April 5, 2005, after having found that the parties had an agreement about
the modification of the decree, the trial court signed an order in a suit to modify
parent-child relationship. It altered Ron and Sheri’s rights on medical decisions to
include an arbitrator for disagreements between them; provided that the parents
communicate by email; modified the parties’ periods, terms, and conditions of
possession; and established a permanent injunction intended to regulate their
communications and their administration of prescription medication to the child. 
          On April 19, 2006, the trial court signed another order in a suit for modification
of support and to confirm support arrearage. The trial court found that the parties had
agreed to the entry of orders that modified Ron’s monthly child and medical support
obligations and ordered him to pay child and medical support judgments by June 1,
2006.
          Finally, on July 21, 2006, the trial court signed a third modification order,
“Agreed Final Order Modifying Prior Order in Suit Affecting Parent-Child
Relationship.” It established a plan for the evaluation and subsequent treatment of
the child for ADD/ADHD, other medical conditions, and dental work. It enjoined the
parties from unnecessarily removing the child from school; enjoined Ron, for 40
months, from filing for additional modifications; and addressed alleged child support
arrearages.
          On September 26, 2008, Sheri sought enforcement of the prior orders, asserting
that on over 140 occasions, Ron had violated all three prior modification orders. The
trial court heard the petition, and on December 17, 2008, in its enforcement order,
found Ron in contempt of its prior orders in 110 instances. For each instance of
contempt, as punishment, the trial court assessed Ron a punishment of six months
confinement and a $500 fine, the punitive sentences to run concurrently.
          Having found that “the child has been destroyed particularly by his father,” as
additional relief, the trial court gave Sheri exclusive right to consent to invasive
medical and dental procedures for the child, as well as all psychological and
psychiatric treatment for the child until he turned 18. It ordered that Ron’s periods
of possession and all access to the child be supervised at all times and that his
overnight periods of possession be eliminated. Additionally, the trial court awarded
Sheri a child support arrearage judgment of $1,264.79 and an $18,923 judgment for
attorney’s fees, expenses, and costs, plus interest.
          The trial court ordered Ron’s confinement to be probated for a period of nine
years, with Ron placed on community supervision, provided that he abide by various
terms and conditions, including those on an attached, three-page “Exhibit ‘A’ Terms
and Conditions of Community Supervision.” Subsequently, Ron petitioned this Court
for habeas corpus relief, attacking all but four of the trial court’s contempt findings
and various of its other provisions (including numerous of its probation/conditions
of community supervision provisions).
ANALYSIS
Availability of Habeas Corpus Review
          Ron is not physically confined in jail because the trial court has suspended his
commitment and placed him on community supervision. Under the terms and
conditions of the suspension of commitment and community supervision, however,
Ron must, among other things, report to a community supervision officer (CSO), as
specified by the CSO; permit the CSO to visit Ron at Ron’s home or elsewhere, as
deemed appropriate by the CSO; participate in employment assistance, as directed by
the CSO; complete referrals or counseling on a variety of topics, as ordered by the
trial court or directed by the CSO; no longer have overnight periods of possession
with the child; and, if he exercises periods of possession and access to the child, do
so under the supervision of a third party. The parties dispute whether, under the
December 17, 2008 enforcement order, the trial court has illegally restrained Ron so
as to entitle him to habeas corpus review. 
          To qualify for habeas corpus relief from a court of appeals, a person must be
“restrained in his liberty . . . when it appears that the restraint of liberty is by virtue
of an order, process, or commitment issued by a court or judge because of the
violation of an order, judgment, or decree previously made, rendered or entered by
the court or judge in a civil case. Tex. Gov’t Code Ann. § 22.221 (Vernon 2004). 
Thus, it must be shown that the contemnor has undergone a restraint of liberty. Ex
parte Crawford, 506 S.W.2d 920, 921 (Tex. Civ. App.—Tyler 1974, orig.
proceeding).
          Ron cites Ex parte Williams, 690 S.W.2d 243 (Tex. 1985), for the proposition
that “‘any character of restraint which precludes absolute and perfect freedom of
action will justify the issuance of the writ.’” Id. at 244 (quoting Ex parte Calhoun,
91 S.W.2d 1047, 1048 (Tex. 1936)). The trial court had found Williams in contempt,
ordered him to jail, but released him on condition that he post a bond and prosecute
an “appeal.” Id. at 243. Addressing the issue of restraint, the supreme court stated,
“There are restraints on Williams’ liberty. His incarceration is not a speculative
possibility where the unfolding of events may render the controversy moot; his bond
could be revoked at any time, resulting in his incarceration.” Id. at 244. Sheri
attempts to distinguish Williams from this case, inferring that Ron’s incarceration is
a speculative possibility; that the terms and conditions of his probation are clear; and
that if he complies with them, he will not be incarcerated. We are not persuaded by
this argument because in Ron’s petition, he challenges various of the terms and
conditions of his probation as being in conflict.
          Citing Ex parte Brister, 801 S.W.2d 833, 835 (Tex. 1990), and Ex parte
Duncan, 796 S.W.2d 562, 564 (Tex. App.—Houston [1st Dist.] 1990, orig.
proceeding), Ron asserts that courts have extended the meaning of restraint to include
probation, provided that the terms of probation include some type of tangible restraint
on liberty.


 Ron notes that in In re Ragland, 973 S.W.2d 769 (Tex. App.—Tyler
1998, orig. proceeding), the Tyler Court of Appeals has held that the requirement of 
weekly community service over the course of a year qualified Ragland to pursue relief
by petition for writ of habeas corpus. Id. at 771. Sheri attempts to distinguish Brister
and Duncan from this case, saying that Ron is not subject to house arrest as Brister
was and his presence is not confined to Harris County as Duncan’s was. The
distinctions Sheri attempts to draw between Brister and Duncan and this case are not
significant inasmuch as in holding that Brister and Duncan were sufficiently
restrained to qualify for habeas corpus relief, the reviewing courts in those cases also
referred to requirements to report to CSO’s, a factor also present in Ron’s probation
terms and conditions. Additionally, Sheri makes no attempt to distinguish Ragland.
          To further support her contention that Ron is not sufficiently restrained to
warrant habeas corpus relief, Sheri cites In re Look, No. 01-02-00959-CV, 2003 Tex.
App. LEXIS 2056 (Tex. App.—Houston [1st Dist.] March 5, 2003, orig. proceeding)
(mem. op.) and In re Thomas, No. 01-07-00440-CV, 2008 Tex. App. LEXIS 2058
(Tex. App.—Houston [1st Dist.] March 18, 2008, orig. proceeding) (mem. op.), cases
involving probation conditions, restraint, and availability of habeas corpus review. 
In Look, the terms and conditions of relator’s probation simply included the
requirement to make a monthly payment against an accumulated child support
arrearge, but did not include the obligation to report to a CSO or any other tangible
restriction on Look’s liberty. See Look, 2003 Tex. App. LEXIS 2056, at *2-3. We,
therefore, hold it to be inapplicable to the question of habeas corpus review in the
present case. In Thomas, Thomas complained of having inadequate information to
comply with various terms and conditions of his suspension of commitment—having
to participate in counseling, without specification of what type of counseling, having
to pay a community supervision fee without specification of where to pay it, and
having to give his former spouse additional periods of possession of their child
without specification of what those periods would be. Thomas, 2008 Tex. App.
LEXIS 2058, at *7-8. These simply constitute requests for additional information, but
do not rise to the level of allegations that the conditions are unconstitutionally vague
so that he cannot reasonably comply with them. Here, Ron complains about conflicts
and ambiguities in the various orders ,which he asserts violate his due process rights. 
We hold that Ron is restrained so as to be entitled to habeas corpus review.
Standard of Review
          The purpose of a habeas corpus proceeding is not to determine the ultimate
guilt or innocence of the relator, but only to ascertain whether the relator has been
unlawfully restrained. Ex parte Gordon, 584 S.W. 2d 686, 688 (Tex. 1979). The
presumption is that the order is valid. In re Turner, 177 S.W.3d 284, 288 (Tex.
App.—Houston [1st Dist.] 2005, orig. proceeding) (citing Ex parte Occhipenti, 796
S.W. 2d 805, 809 (Tex. App.—Houston [1st Dist.] 1990, orig. proceeding)). A writ
of habeas corpus issues if a trial court’s contempt order is beyond the court’s power
or the court did not afford the relator due process of law. Turner, 177 S.W.3d at 288
(citing In re Henry, 154 S.W.3d 594, 596 (Tex. 2005)). A relator bears the burden
of showing that he is entitled to relief. Turner, 177 S.W.3d at 288 (citing Occhipenti,
796 S.W.2d at 809).
Conservatorship or Possession Modification
Without Proper Pleadings and Evidence

          In issue one, Ron asserts that the judgment of contempt is void because the trial
court lacked authority to modify the effective terms of conservatorship or periods of
possession without proper pleadings or proof.
          In her response, Sheri contends that her enforcement motion clearly states that
she is requesting modifications to Ron’s periods of possession by limiting his access
to the child. In Sheri’s enforcement motion, the only relief that she requested relative
to conservatorship or possession was that Ron’s “weekday possession schedule be
suspended to prevent the child from being removed from school early and from
missing any more school days for unexcused absences and to protect against over-medication of the child until RONALD SANNER is in full compliance with the
Court’s orders.” Ron’s answer responded that Sheri’s request for clarification—that
his weekday possession schedule be suspended—should be denied because it would
effect an unauthorized substantial change in the orders sought to be enforced.
          In its enforcement order, the trial court modified its prior orders relative to
conservatorship and possession in the following respects: (1) gave Sheri the exclusive
right to consent to invasive medical and dental procedures, psychiatric, and
psychological treatment for the child until he turns 18; (2) ordered all of Ron’s
periods of possession and access to the child to be supervised at all times by a third
party; (3) ordered that if Ron opted to have supervised possession of the child in a
group setting, that the periods of possession would be set by SAFE Visitation
Program (“SVP”); (4) terminated Ron’s overnight periods of possession; (5) ordered
that all non-school-day visitation would begin at 9 a.m. and end at 8 p.m. and that
school-day visitation begin at the time school recessed and end at 8 p.m.; and (6)
ordered that if by December 19, 2008, Ron did not secure a private supervisor from
the SVP, that he access the child following a prescribed procedure involving
registering with the SVP for the supervised periods of possession as ordered in the
enforcement order, to be carried out in accordance with all the SVP’s rules and
regulations. Additionally, the trial court provided that these orders took precedence
over its prior orders, and it made compliance with their terms a condition of Ron’s
nine-year probationary period. 
          Because Sheri did not request such measures in her motion for enforcement, 
Ron was deprived of his due process right to notice that the trial court would consider
such measures. See In reParks, 264 S.W.3d 59, 62 (Tex. App.—Houston [1st Dist.] 
2007, orig. proceeding) (holding, “Proper notification includes notification, from the
pleadings, of the relief that the court may grant.”) (citing Cunningham v. Parkdale
Bank, 660 S.W.2d 810, 812-13 (Tex. 1983) and Barnett v. Barnett, 640 S.W.2d 776,
777 (Tex. App—Houston [1st Dist.] 1982, no writ)); Tex. Fam. Code Ann. §
157.002(a)(3) (Vernon 2008) (“A motion for enforcement must, in ordinary and
conscise language . . . state the relief requested by the movant.”). Without proper
pleadings and evidence, a trial court exceeds its authority if it modifies or reforms
previous orders affecting the custody of a child. Parks, 264 S.W.3d at 62 (citing In
re A.M., 974 S.W.2d 857, 861 (Tex. App.—San Antonio 1998, no pet.); Ex parte
Karr, 663 S.W.2d 534, 539 (Tex. App.—Amarillo 1983, orig. proceeding), and
Martin v. Martin, 519 S.W.2d 900, 902 (Tex. Civ. App.—Houston [1st Dist.] 1975,
no writ)). When a trial court’s judgment exceeds its authority, an appellate court may
grant habeas corpus relief. Parks, 264 S.W.3d at 62, (citing Turner, 177 S.W.3d at
288). Here, without proper pleadings, the trial court exceeded its authority by
modifying and reforming some of the conservatorship and possession provisions of
its prior orders in the ways outlined in the six items stated above. Accordingly, we
hold those provisions to be void and strike them from the trial court’s enforcement
order. See, e.g., Ex parte Linder, 783 S.W.2d 754, 758 (Tex. App.—Dallas 1990,
orig. proceeding) (when trial court assessed separate measures of enforcement relief
and one was invalid, court of appeals severed the void portion and left the remainder
of the contempt judgment intact).
          Nevertheless, citing Ex parte Boyle, 545 S.W.2d 25, 28 (Tex. App.—Houston
[1st Dist.] 1976, orig. proceeding), Sheri contends that these matters were tried by
consent; that Ron came into the hearing knowing that Sheri was asking the court to
enter an order altering his periods of possession; and that though he objected in his
written answer, he went through the trial and made no further objection. 
Additionally, she asserts that an exhibit that she admitted at the hearing outlined the
relief that she was requesting, including a request to limit Ron’s access to the child.
          Sheri’s trial by consent contention is unavailing. This case is distinguishable
from Boyle. In Boyle, Boyle contended that the order of commitment was void
because it required him to pay attorney’s fees when his former spouse had not
requested attorney’s fees in her motion for contempt. Id. at 28. In rejecting that
complaint, we noted that the contempt proceeding was brought pursuant to former
Texas Rule of Civil Procedure 308-A,


 which provided that the attorney representing
the child support obligee should file with the clerk of the court a written statement,
verified by the affidavit of the child support claimant, describing the child support
obligor’s claimed disobedience of the trial court’s child support order. Id. We noted
particularly, that former Rule 308-A went on to provide that “‘no further written
pleadings shall be required.’” Id. We also noted that the attorney for the movant
asked for attorney’s fees during the case. Id. 
          In contrast, the instant case is brought pursuant to Texas Family Code
Annotated, § 157.002 (Vernon 2008) with stronger pleading requirements than those
of former Rule 308-A.


 Additionally, unlike in Boyle, in which at trial, Boyle’s
former wife requested the attorney’s fees not pleaded for, here, Sheri, during the
hearing, did not ask for the trial court’s prior conservatorship and possession orders
to be modified in the way the trial court provided in its enforcement order. 
          Regarding Sheri’s assertion that Ron had knowledge that she was asking the
court to alter his periods of possession, his knowledge was limited to paragraph 14
of her amended petition for enforcement, which asked only for his weekday
possession schedule to be “suspended . . . until RONALD SANNER is in full
compliance with the Court’s orders.” (Emphasis added.) This pleading did not put
him on notice that the court would consider, for the duration of the child’s childhood,
altering Ron’s medical, dental, and psychological consultation rights; terminating his
overnight periods of possession; requiring all his visitation to be supervised; and the
other conservatorship and possession modifications that the court made. 
          Regarding Sheri’s assertion that after objecting in his answer to Sheri’s
requested relief of suspension of his weekday possession schedule, Ron went through
the trial and made no further objection to alteration of the trial court’s prior
conservatorship and possession orders, it was not until after he had rested and the trial
court rendered its judgment that he learned of the unpleaded-for relief that the trial
court ordered. 
          Finally, Sheri’s assertion that Ron had notice because she proffered an exhibit
outlining the relief that she was requesting, which included a request to limit Ron’s
access to the child, is without merit. An examination of the reporter’s record shows
that during Sheri’s counsel’s testimony on attorney’s fees, she made a brief reference
to an Exhibit 2 “on relief requested,” but that it was not tendered to Ron’s counsel,
nor did the trial court admit it into evidence. 
          We sustain Ron’s first issue and grant the alternative relief that he requested
under it as follows. We strike from body of the enforcement order, as well as the
attached conditions of probation, those provisions that award to Sheri the exclusive
right to consent for the child to invasive medical and dental treatment and to his
psychological care. We likewise strike those provisions that modify Ron’s periods
of possession with the child and the conditions under which the trial court specified
that they should be exercised.
Clarity of Underlying Orders Sought to be Enforced

          In issues two, three, and seven, Ron asserts that the underlying orders sought
to be enforced are not sufficiently specific to be enforced by contempt.
 
          A. Standard of Review
          To be enforceable by contempt, a decree must state the terms of compliance in
clear, specific, and unambiguous terms so that the person charged with obeying the
decree will readily know exactly what duties and obligations are imposed upon him. 
Ex parte Acker, 949 S.W.2d 314, 317 (Tex. 1997) (quoting Ex parte Chambers, 898
S.W.2d 257, 260 (Tex. 1995)). Interpretation of the decree should not rest on
implication or conjecture. Acker, 949 S.W.2d at 317 (quoting Ex parte Blasingame,
748 S.W.2 444, 446 (Tex. 1988)). “‘Where the court seeks to punish . . . by
imprisonment for the disobedience of an order or command, such order or command
must carry with it no uncertainty, and must not be susceptible of different meanings
or construction, but must be in the form of a command, and, when tested by itself,
must speak definitely the meaning and purpose of the court in ordering.’” Ex parte
Slavin, 412 S.W.2d 43, 45 (Tex. 1967) (quoting Ex parte Duncan, 62 S.W. 758, 760
(Tex. Crim.App. 1901)). Only the existence of reasonable, alternative constructions
will prevent the enforcement of the order. Chambers, 898 S.W.2d at 260.
          B. Unauthorized Doctors and Medication
          In issue two, Ron asserts that enforcement order is void with respect to
violations 3, 5, and 7 because the terms of the underlying order were not sufficiently
specific to be enforced by contempt. In violations 3 and 5, the trial court found that
Ron took the child to see doctors who had not been recommended by the Texas
Children’s Hospital Learning Support Center (“TCHLSC”)—Dr. Barton in 2008 and
Dr. Young in 2007. In violation 7, the trial court found that Ron put the child on
“Strattera as prescribed by Dr. Tran, a medication other than the Adderall
recommended by the child’s current doctor, which interferes with the child’s
medication prescribed by his current doctor.”
          These violations are based on the following language in the July 21, 2006
Agreed Final Order Modifying Prior Order in Suit Affecting the Parent-Child
Relationship:
          ADD/ADHD Evaluation
The parties agree and IT IS THERFORE ORDERED that the
child, [name], shall be evaluated at Texas Children’s Hospital Learning
Support Center for ADD/ADHD, or any other condition the child might
have, and with respect to any medication, if any, necessary for any such
conditions found. It is ORDERED that all costs associated with the
evaluation(s) shall be processed through . . . . It is ORDERED that all
current treatment of the child shall remain unchanged until the
evaluation(s) has been performed and completed. The parties are
ORDERED to follow all recommendations of existing doctors.
 
IT IS FURTHER AGREED AND THEREFORE ORDERED that
the Texas Children’s Hospital Learning Support Center evaluation and
recommendation shall be controlling on all issues pertaining to the child
having, or not having as the case may be, ADD/ADHD and the need for
any medication related thereto. IT IS ORDERED that both parties . . . 
are enjoined from taking the child to any other psychologist,
psychiatrist, therapist or medical professionals related to these health
issues unless Texas Children’s Hospital Learning Support Center
recommends the child to see an outside provider except the child’s
current treating doctors. Each party is ordered to cooperate [in]. . . 
evaluations of the child . . . . Nothing in this order shall be interpreted
to prohibit the child from seeing other medical health professionals
referred by Dr. Muzumdar for other medical issues. To the extent Texas
Children’s Hospital Learning Support Center’s recommendations do not
address an issue, the parties are ORDERED to abide by all prior court
orders pertaining to such issue.

          In his petition, Ron asserts that TCHLSC’s recommendations did not exist on
July 21, 2006, the date the trial court signed the Agreed Final Order Modifying Prior
Order in Suit Affecting the Parent-Child Relationship. Ron also asserts that since the
date of the signing of the agreed final order, TCHLSC recommendations have not
been incorporated into any written court order. 
          While those assertions are true, Exhibit 12 to the reporter’s record shows that
TCHLSC made its evaluation of the child and written recommendations less than a
month later, on August 14, 2006, with Ron as a copied recipient. In them, TCHLSC
made no recommendations that the child see Dr. Young or Dr. Barton. On cross-examination, Sheri’s counsel asked Ron if TCHLSC had recommended Dr. Young,
to which, Ron responded, “[N]o.” This indicates that Ron was familiar with
TCHLSC’s recommendations and their contents. Sheri testified, without
contradiction, that neither Dr. Barton nor Dr. Young were recommended by
TCHLSC.
          In his petition, Ron contends that Sheri offered no evidence to show that Dr.
Young and Dr. Barton did not come under the “current treating doctors” exception
to the injunction prohibiting taking the child to non-TCHLSC recommended doctors. 
This is not accurate, however. Exhibit 9, the business records of Cornerstone
Psychiatry, contain documents showing that Ron took the child to see Doctor Young
for the first time in 2007 and Dr. Barton for the first time in 2008. 
          With respect to violations 3 and 5, the injunction prohibiting the child’s parents
from taking the child to see non-TCHLSC recommended doctors is clear. It does not
rest on implication or conjecture and is not susceptible to more than one meaning,
meeting a test for clarity announced in Acker. See Acker, 949 S.W.2d at 317. Ron’s
testimony that TCHLSC did not recommend Dr. Young is additional evidence that
Ron understood the injunction. 
          Regarding violation 7, the July 21, 2006 order, under the ADD/ADHD
Evaluation section, provides that until TCHLSC’s evaluation or evaluations are done,
the current treatment of the child should remain unchanged, but that, thereafter,
TCHLSC’s, ADD/ADHD medication recommendation would control. TCHLSC’s
recommendation regarding AD/HD medication was that “continued medication
treatment is warranted,” but that it should be monitored for efficacy at least annually. 
The language of this recommendation is vague in that it does not specify a particular
medication. Such a recommendation could be construed to support continued use of
Adderall, but would not preclude the use of Straterra, which the child’s AD/HD
doctor, Dr. Rosenberg, testified that he had discussed with Ron before the summer
of 2008. Because July 21, 2006 order made the TCHLSC’s AD/HD medication
recommendation controlling, but the recommendation itself was susceptible of more
than one meaning, we hold that it was not sufficiently specific to support enforcement
as found by the trial court in violation 7. We hold violation 7 to be void. We sustain
issue two relative to violation 7, but deny it relative to violations 3 and 5. We strike
violation 7 from the enforcement order.
          C. Refusal to Administer Medication
          In issue three, Ron asserts that the language of the April 5, 2005 Order in Suit
to Modify Parent Child Relationship is too vague to be enforced as stated in
violations 9, 10, and 11 of the enforcement order. In violations 9, 10, and 11 of the
enforcement order, the trial court found that on three different occasions, during a
period of his possession of the child that, Ron “refused to give the child medication.” 
The language sought to be enforced provides that: “IT IS ORDERED that RONALD
JAMES SANNER AND SHERI RENEE DOOLEY are permanently enjoined from:
. . . Removing the child from, stopping the child from, or preventing the child from
taking any medication prescribed for the child.”
          Ron contends that the way the order is written, there is nothing that
affirmatively obligates him to administer the medication to the child and that as long
as he did nothing to prevent the child from taking the medication, his conduct is not
susceptible to a contempt finding. We agree. The order sought to be enforced did not
order Ron to give the child medication. Because the trial court’s findings in
violations 9, 10, and 11 found Ron guilty of contempt for not performing specific acts
that he was not ordered by the court to do, they must fail. See Ex parte Hodges, 625
S.W.2d 304, 306 (Tex. 1981) (holding invalid trial court findings that Hodges was in
contempt for not turning over to receiver certain company records and for refusing
to permit receiver to take physical inventory of company when order sought to be
enforced did not order Hodges to turn over company records or to permit receiver to
take physical inventory of company). We sustain issue three and strike violations 9,
10, and 11 from the enforcement order.
          D. Making Disparaging Remarks
          In issue seven, Ron asserts that violations 36-54 of the enforcement order are
void because they are based on an injunctive order that is vague or is an
unconstitutional infringement on his right to free speech.
          The trial court’s April 5, 2005 Order in Suit to Modify Parent-Child
Relationship contains a permanent injunction based on the findings that (1) the parties
had entered into an agreement regarding the modification and that the agreement was
in the best interest of the child and (2) that because of the conduct of the parties, a
permanent injunction should be granted for appropriate relief, said injunction being
in the best interest of the child. The trial court’s order then enjoins both parties from
“Making or permitting to be made any disparaging remarks concerning the other
party, their respective families, or this litigation.” In the enforcement order, the trial
court found that in emails that Ron had sent to Sheri, he had violated this order 19
times.
          Ron contends that the injunctive order in question is not specific enough to be
enforced. Ron gives the dictionary definition of “disparage” as “to speak slightingly
about.” To this could be added, to “depreciate, belittle”; “to bring reproach or
discredit upon.” Random House Webster’s Unabridged Dictionary 567 (2d ed.
2001). Ron then asserts that this definition presumes that the statements are being
made about someone to a third person. Ron argues that he sent the emails to Sheri
and no one else and that Sheri’s interpretation of the underlying order would permit
her to assert that every remark Ron makes to her should be considered disparaging
based on her own sensibilities, while they were not necessarily intended as such. 
This overlooks the fact that when Sheri brings a charge in a motion to enforce that
Ron has violated the order by making a disparaging remark that the trial court
evaluates the alleged disparaging remark to determine whether it is disparaging. 
          With reference to his free speech contention, Ron asserts that because the
injunction does not limit the prohibition of making disparaging remarks about each
other, their families, and the litigation to such remarks made to the child or in its
presence, the injunction could apply to statements made to a co-worker or to a
therapist. We note that there is no evidence in the record of such circumstances. 
          To support his contention that the injunction is void as an unconstitutional
infringement on his right to free speech, Ron cites Grigsby v. Coker, 904 S.W.2d 619
(Tex. 1995) and Davenport v. Garcia, 834 S.W.2d 4 (Tex. 1992). These cases are
distinguishable from the instant case. Both Grigsby and Davenport deal with “gag
orders,” pre-trial orders issued by judges to the parties not to discuss imminent
litigation outside the court, see Davenport, 834 S.W.2d at 6 and Grigsby, 904 S.W.2d
at 620, designed to prevent imminent and irreparable harm to the judicial process that
would deprive litigants of a just resolution of their soon-to-be-tried dispute. See
Davenport, 834 S.W.2d at 10. In contrast, in the instant case, the injunction in the
order sought to be enforced was not made on the eve of trial to protect its outcome. 
Rather it was made after a trial of a motion to modify resulting in findings that (1) the
parties had entered into an agreement regarding the requested modification, which
was in the best interest of the child and (2) because of the conduct of the parties, a
permanent injunction should be granted for appropriate relief, said injunction being
in the best interest of the child.
          We conclude that Ron has not carried his burden to show that he is entitled to
habeas corpus relief with respect to issue seven.
Notice to Ron of Way Prior Order Violated

          In issues four, five, and six, Ron asserts that enumerated violations of prior
orders as found by the trial court in its enforcement order are void because they do
not state the manner in which Ron violated the court’s prior order.
          A. Standard of Review
          An enforcement order must include the manner of a respondent’s
noncompliance with the order sought to be enforced. Tex. Fam. Code Ann. §
157.166(a)(3) (Vernon 2008). The purpose of an enforcement order is to notify the
contemnor of how he has violated the provisions for which enforcement is sought and
how he can purge himself of contempt, to notify the sheriff accordingly so that he
may do his duty, and to provide sufficient information for adequate review. Ex parte
Conoly, 732 S.W.2d 695, 697 (Tex. App.—Dallas 1987, orig. proceeding). The
contempt order “‘must contain specific findings so that the contemner will be fully
apprised of his alleged act of misconduct so that he may overcome by proof, if any
is available, the presumption of the validity of the order.’” Id. (quoting Ex parte
Hardy, 531 S.W.2d 895, 896 (Tex. Civ. App.—Dallas 1975, orig. proceeding)). A
contempt order is insufficient if its interpretation requires inferences or conclusions
about which reasonable persons might differ. Turner, 177 S.W.3d at 289 (citing In
re Houston, 92 S.W.3d 870, 877 (Tex. App.—Houston [14th Dist.] 2002, orig.
proceeding)).
          B. Removal of Child from School or 
               Causing Child to Miss School

          In issues four and five, Ron asserts that, in violations 12-23 and 24-27 of the
enforcement order, the trial court failed to state the manner in which he violated the
underlying prior order sought to be enforced. 
          In her enforcement motion, Sheri states allegations 12-23 generally, “[T]he
child was removed from school early on [date] without notice to Sheri.” Allegations
24-27 read generally, “[T]he child was absent from school on [date] which was not
an excused absence and without notice to Sheri Dooley.”
          In the enforcement order, the trial court states violations 12-23 generally, “The
child was removed from school early on [date] without notice to Sheri Dooley.” 
Violations 24-27 read generally as follows: “The child was absent from school on
[date], which was not an excused absence and without notice to Sheri Dooley.” 
          Ron challenges these violations, arguing that there is no finding that he is in
anyway involved in the events which may have led to the child’s removal. We agree.
          The trial court findings in violations 12-27 do not constitute violations of the
July 21, 2006 modification order sought to be enforced. The language in that order
provides as follows: 
IT IS ORDERED that Petitioner and Respondent are hereby
permanently enjoined from:
 
(1) Removing the child from the school or causing the child to
miss school for any purpose other than for a illness or for medical
appointments for which advanced notification has been provided to both
parties in writing, or has been recommended by Dr. Muzumdar when the
parties have been unable to reach an agreement . . . .
 
IT IS FURTHER ORDERED that neither party shall remove the child
from school for any purpose other than if the child is ill, or for a
scheduled appointment agreed to by the parties or recommended by Dr.
Muzumdar, or otherwise agreed to by the parties with respect to the
specific absence.

The language of paragraph “(1)” prohibits the parties from removing the child from
school or causing him to miss school, except in cases of (1) the child’s illness, (2)
medical appointments for the child for which either of the parties has provided
advanced written notification to the other of the appointment, and (3) medical
appointments recommended by Dr. Muzumdar when the parties have been unable to
reach an agreement. The last paragraph set out also prohibits the parties from
removing the child from school except in cases of (4) scheduled appointments agreed
to by the parties, (5) scheduled appointments recommended by Dr. Muzumdar, or (6)
scheduled appointments otherwise agreed to by the parties with respect to the specific
absence. These possibilities do not create a general obligation on the parties’ part to
notify each other when they remove the child from school or cause the child to miss
school. Nevertheless, in violations 12-27, when the trial court found Ron’s
purportedly contemptuous conduct as removing the child from school early without
notice to Sheri or the child absent from school without notice to Sheri, it convicted
him of violating such a non-existent general obligation of notice to Sheri. This is
akin to convicting a person of a crime on the basis of conduct that does not constitute
the crime, which offends the basic notion of justice and fair play embodied in the
United States Constitution. Hammock v. State, 211 S.W.3d 874, 879 (Tex.
App.—Texarkana 2006, no pet.) (quoting United States v. Briggs, 939 F.2d 222, 228
(5th Cir. 1991)).
          From the enforcement order, we strike, as void, violations 12-27.
          C. Refusal to Return Child to Sheri’s Residence as Ordered
          In issue six, Ron asserts that violations 28-33 of the enforcement order are void
because they fail to state the manner in which Ron violated the trial court’s April 5,
2005 modification order.
          The April 5, 2005 modification order provides that Ron is to return the child
to Sheri’s residence at the end of each period of possession, but if a period of Ron’s
possession ends at the time the child’s school resumes, he is to surrender the child to
Sheri at the child’s school. This order also contains a provision that when they return
the child, the parties are also to return the personal effects that the child brought at
the beginning of the period of possession. 
          In violations 28-33, the trial court found Ron guilty of separate acts of
contempt, which are each expressed as follows: “The parties continue to reside in the
same county and Ronald Sanner refused to return the child to the residence of Sheri
Dooley as ordered on [specified date].” Ron argues that these violations do not
specify the manner in which Ron failed to comply because the way they are
expressed, they could include Ron’s failure to return the child at a designated time or
location or his failure to return the child with all his belongings.
          Here, however, the corresponding allegations in Sheri’s enforcement motion,
which Ron received, mentioned only Ron’s refusal to return the child to Sheri’s
residence, mentioning nothing about Ron’s delivering the child late or without his
personal effects. In Sheri’s testimony, in response to her counsel’s question regarding
what violations 28-33 deal with, Sheri responded that they had to do with the fact that
Ron did not bring the child back to her home. Ron’s testimony on this subject also
focused on the place the child was surrendered, mentioning nothing about the child’s
personal effects and discussing a late surrender in only one of the six instances. The
record does not show that Ron was confused about the trial court’s rendition of
judgment on these violations. We hold that the interpretation of violations 28-33 as
being one that Ron refused to return the child to Sheri’s residence, without reference
to the time that the child was returned or whether he was returned with his personal
belongings, does not require inferences or conclusions about which reasonable
persons might differ. We further hold that violation 28-33 of the enforcement order
notify Ron of the manner in which he violated the court’s April 5, 2005 modification
order and that it provides sufficient information for an adequate review. See Turner,
177 S.W.3d at 289 (quoting Conoly, 732 S.W.2d at 697). 
          Ron argues that Sheri has waived her right to enforce this right to have the
child delivered to her residence because she and Ron have established a pattern of
surrendering the child at a neutral spot. The Texas Supreme Court has referred to
waiver as a “voluntary relinquishment of a known right.” Motor Veh. Bd. of the Tex.
Dep’t. of Transp. v. El Paso Indep. Auto. Dealers Ass’n., Inc., 1 S.W.3d 108, 111
(Tex. 1999). Sheri’s testimony on this matter is that she and Ron do not have an
agreement to meet in the middle between their residences to surrender the child and
that it has developed that way because “[Ron’s] told me pretty much I have to meet
him there or I don’t see my child.” This is evidence that Sheri has not voluntarily
relinquished the rights provided in the modification order to have Ron deliver the
child to her residence. We hold that Ron has not carried his burden to show that he
is entitled to habeas corpus relief for violations 28-33 on the basis of waiver. We
overrule issue six.
Validity of Child Support Violations in Enforcement Order

          In issue eight, Ron asserts that there is no evidence to support violations 56-113 relative to child support and medical reimbursement payments; that the evidence
offered by Sheri does not rise to the level of “beyond a reasonable doubt.” He
requests that we set aside as void violations 56-113 and related probationary
conditions because they are without support in the evidence.
          A judgment of contempt without support in the evidence is void and may be
attacked and set aside even in a collateral proceeding. Ex parte Davila, 718 S.W.2d
281, 282 (Tex. 1986). As a reviewing court, we may determine only if the trial
court’s contempt findings are so completely without evidentiary support that the trial
court’s judgment is void because it deprives a relator of liberty without due process
of law. In re Pruitt, 6 S.W.3d 363, 364 (Tex. App.—Beaumont 1999, orig.
proceeding). A criminal contempt conviction for disobedience of a court order
requires proof beyond a reasonable doubt of (1) a reasonably specific order; (2) a
violation of the order; and (3) the willful intent to violate the order. Ex parte
Chambers, 898 S.W.2d 257, 259 (Tex. 1995).
          Ron argues that Sheri offered no evidence of the dates that the child support
and medical support payments were due, of the dates on which Ron allegedly failed
to make complete payments, and of the amounts that were or were not paid on each
of these dates. We agree.
          Sheri testified that Ron is ordered to pay child support of $475 a month, which
started in June 2006, but she gave no testimony regarding what day of the month the
payment is due. Similarly, regarding medical support, Sheri testified that Ron is
ordered to pay her $63 a month, without specifying the day of the month on which it
is due. Sheri testified that violation 56 is Ron’s failure to pay child support and
medical premium reimbursement, but she did not testify the date it was due.
Regarding violations 57-113, Sheri offered no testimony of the day that the violations
occurred or the amount that Ron paid or did not pay on the due dates.
          Sheri introduced into evidence Exhibit 10, a computer print-out from the Harris
County Child Support System showing the dates and amounts of Ron’s support
payments since 2003. It does not, however, list the child support payments that Ron
failed to pay, the amount that he failed to pay, or the dates that he failed to make
them. Our sister court, the Fourteenth Court of Appeals, has held such a print-out,
attached as a contempt order exhibit, to be legally inadequate to show the way in
which the relator had contemptuously disobeyed the underlying order. See In re
Nesevitch, 93 S.W.3d 510, 513 (Tex. App.—Houston [14th Dist.] 2002, orig.
proceeding). The Fourteenth Court of Appeals held the print-out to be legally
inadequate for that purpose because it did not contain the dates that the support
payments were due and the amounts relator paid or did not pay on those due dates. 
Id. Similarly, in this case, we hold that Exhibit 10 provides no evidence to support
violations 56-113 in Sheri’s enforcement motion.
          Sheri argues that the trial court took judicial notice of the orders at issue and 
the payment history, combined them, and derived the evidence necessary to support
the violations in its enforcement order. Sheri does not provide a cite to the place in
the record where the trial court took judicial notice of the order in issue. Because
they are supported by no evidence, we hold violations 56-113 to be void. 
          Under this issue, Ron also complains that the enforcement order lacks
sufficient clarity to be enforced because of ambiguity relative to the trial court’s
calculation of the amount of child and medical support arrearage. Ron contends that 
to the extent that his liberty depends on compliance with conditions of probation
involving his payment of the arrearage that the trial court found in the enforcement
order, the enforcement order should be declared void. We agree.
          When the amounts shown for violations 56-113 in the “Amount Due” column
of the enforcement order are added, the total comes to $15,036, but the enforcement
order shows the total of that column to be $17,184. When the amounts in the
“Amount Paid” for those violations are added, the total comes to $14,000, but the
enforcement order shows the total for that column to be $16,700. If $14,000 is
subtracted from $15,036, the resulting amount of arrearage would be $1,036. In the
enforcement order, however, the trial court shows an arrearage of $1,264.79, arrived
at by subtracting $16,700 from $17,184 to get $484, to which it adds $631.95 from
a previous child support judgment, $90.69 from a previous medical support judgment,
and $58.15 as interest.
          In her response brief, Sheri concedes the erroneous calculation of the arrearage
in the enforcement order as an attempt to match it to the $1,264.79 total arrearage to
which she testified. Citing In re Patillo, 32 S.W.3d 907, 910 (Tex. App.—Corpus
Christi 2000, orig. proceeding), Sheri contends that the error can be remedied by
reformation of the enforcement order. In Patillo, the court of appeals was able to
reform the civil coercive confinement provision of the enforcement order from
confinement until Patillo paid a total arrearage of $44,081, to confinement until he
paid $10,150, the amount for which Patillo had actually been held in contempt for not
paying. Id. at 909-10. Here, because we have held that the child/medical support
violations (56-113) to be void, we do not have the information necessary to do a
reformation such as was done in Patillo. 
          Also impairing the ability to reform the arrearage are additional ambiguities in
the record. Sheri testified that she had calculated each of the pages on Exhibit 10 and
that Ron was in arrears in the amount of $1,264.79. She testified that this was broken
down into $956.02 for child support and $300.78 for medical premium
reimbursement. (Id. l. 14-16) When these are added, however, they do not total
$1,264.79. Additionally, Sheri testified that Ron was obligated to reimburse her $63
per month for medical expenses, a figure that she presumably used to arrive at her
arrearage calculation. Yet, the order in question, provided as part of the instant
habeas record, shows the amount ordered to be $62 per month. 
          Ron asserts that to the extent that he has been ordered to pay Sheri the
arrearage by a date certain as part of his probationary terms in the enforcement order
and in its Exhibit A, or risk incarceration, the enforcement order should be declared
void. We agree and strike these two provisions from the enforcement order as void
for being in derogation of Ron’s due process right to notice of the way in which he
has violated the order sought to be enforced. Slavin, 412 S.W.2d. at 45 (“‘Where the
court seeks to punish either by fine, arrest or imprisonment for the disobedience of
an order or command, such order or command must carry with it no uncertainty, and
must not be susceptible of different meanings or constructions . . . .’”) (quoting Ex
parte Duncan, 62 S.W. 758 (Tex. Crim. App. 1901)). 
          We sustain issue eight. We strike from the enforcement order violations 56-113, the attendant arrearage sums, and the conditions of probation that Ron pay a
child support arrearage of $1,264.79.
Clarity of Terms of Probation
          In issue nine, Ron contends that the enforcement order is void because the
terms for probation are not sufficiently specific or they directly conflict with one
another.
          Ron first asserts that there is a conflict in terms regarding his periods of
possession of the child. The first term of community supervision within the body of
the enforcement order requires that Ron comply with the terms of possession and
access to the child as stated in the body of the enforcement order. Ron then points to
the first term of Exhibit A, attached to the enforcement order, which requires him to
comply with the terms and conditions of possession and access to the child as ordered
in the enforcement order and the April 5, 2005 Order in Suit to Modify Parent-Child
Relationship. Under our earlier disposition of issue one, we struck the possession and
access provisions in the enforcement order. Therefore, if there was a conflict between
the possession and access provisions of the enforcement order and those of the April
5, 2005 order, it no longer exists.
          Next, Ron asserts that there is a conflict between the fourth community
supervision provision in the body of the enforcement order that requires him to report
to the CSO as specified by the CSO and the provision in Exhibit A that requires him
to report to the CSO immediately after the hearing and at least once each month
thereafter or each week if not employed full time. In her response, Sheri implies that
these provisions are not in conflict. She asserts that the provision in Exhibit A sets
the general parameters for the frequency of Ron’s reporting to the CSO, while the
fourth term in the body of the enforcement order simply gives the CSO flexibility
within the general parameters to specify the exact time and date for the meetings. 
This is one interpretation, but these provisions could also be interpreted as requiring
that Ron meet with the CSO monthly if he is employed and weekly if he is
unemployed, as well as to meet with the CSO whenever the CSO specifies, even if
more frequently than monthly or weekly. Because the interpretation of such
provisions requires inferences or conclusions about which reasonable persons might
differ, they are of insufficient clarity to apprise Ron of what he must do to avoid
losing his liberty and, therefore, are unconstitutionally vague. See Houston, 92
S.W.3d at 877 (holding that a contempt order is insufficient if its interpretation
requires inferences or conclusions about which reasonable persons might differ). We
strike these provisions from the enforcement order.
          Ron asserts that there is also a conflict in the probationary provisions regarding
the duration of the probation. 
          Within the body of the enforcement order, the trial court provides:
IT IS FURTHER ORDERED that commitment is suspended and
Respondent placed on community supervision for a period of 9 years on
the following terms and conditions:

(Emphasis added.) On page one of Exhibit A, “Terms and Conditions of Community
Supervision” to the enforcement order, the trial court provides:
This Exhibit is incorporated in the Judgment of Contempt for all
purposes as ordered by this Court. The Court suspends the commitment
and orders that RONALD SANNER hereinafter referred to as
Respondent, is placed on community supervision for a period of nine
years . . . .

On page three of Exhibit A, “Terms and Conditions of Community Supervision for
Nonpayment of Child Support” to the enforcement order, however, the trial court
provides:
This Exhibit is incorporated into the Judgment of Contempt for all
purposes as ordered by this Court. The Court suspends the commitment
and orders that Ronald Sanner, Respondent, is placed on community
supervision through the HARRIS COUNTY DOMESTIC RELATIONS
OFFICE (DRO). The term of community supervision is 9 yrs. from the
date of this order OR until all child support arrearages are paid,
whichever occurs first, as determined by the Community Supervision
Officer.

(Emphasis added.)
 
          The first two provisions prescribe an unconditional 9-year duration for the
probationary period, whereas the last one can be interpreted that if Ron pays the child
support arrearage at any time and it is confirmed by the CSO, Ron is released from
the probationary conditions, which otherwise suspend his commitment. Sheri
responds that it is clear from the record that the trial court’s ruling and intent are that
the term of the community supervision operate until the child becomes eighteen. She
asserts that if there is a conflict, the remedy is for this Court to reform it. We agree.
          At the conclusion of the hearing, in the course of its rendition, the trial court
stated as follows:
Court: Rules of probation and this child is nine years of age. Rules of
probation last for the next nine years until the child is 18.
 
Counsel for Ron: I’m sorry. I didn’t get that.
 
Court: Instead of ten years of probation, that would not be appropriate
because the Court will lose jurisdiction over the child when the child
turns 18. So, these rules of probation are in effect until the child turns
18.

Nowhere in the course of its rendition did the trial court say anything about
community supervision’s ending upon Ron’s payment of the child support arrearage. 
Additionally, we have already held the trial court’s adjudication of the amount of
child support arrearage to be erroneous. We strike from the enforcement order
“Exhibit ‘A,’ Terms and Conditions of Community Supervision for Nonpayment of
Child Support,” page 3, the portion of the provision relative to the duration of
community supervision that provides that community supervision would end upon
Ron’s payment of all child support arrearages. See Felters v. State, 147 S.W.3d 488,
491-92 (Tex. App.—Fort Worth 2004, pet. refused) (court of appeals reformed
duration of community supervision from 24 months as incorrectly stated in trial
court’s written judgment to 180 days because of trial court’s oral pronouncement of
that community supervision was to be for 180 days). 
          We sustain issue nine to the extent that we strike the void CSO provisions
regarding when Ron is to report to the CSO and strike the provision that Ron’s
community supervision would end upon his payment of all child support arrearages. 
Attorney’s Fees
          In issue 10, Ron asserts that the enforcement order is void because the trial
court did not have authority to award the total amount of attorney’s fees as child
support.
          The Family Code requires the trial court to award attorney’s fees if it finds that
the respondent has failed to make child support payments or failed to comply with the
terms of an order providing for the possession of or access to a child. Tex. Fam.
Code Ann. § 157.167(a), (b) (Vernon 2008). The statute also provides that the
remedy of contempt is available to enforce such orders. Id. The Family Code also
provides that in a suit affecting the parent-child relationship, the court may render
judgment for reasonable attorney’s fees and that such judgments may be enforced by
any means available for the enforcement of a judgment for a debt. Id. § 106.002 (a),
(b) (Vernon 2008). Article 1, section 18 of the Texas Constitution prohibits
imprisonment of a person for debt, thereby ruling out contempt-ordered confinement
as a means to enforce a judgment for debt. See Tex. Const. Art. 1, § 18.
          In the instant case, the trial court found Ron in contempt for violations relating
to child support, possession, non-compliance with injunctions, and non-compliance
with terms governing the child’s medical care. Without evidence segregating the
attorney’s fees in accordance with the legal work that went toward establishing the
various types of violations, the trial court awarded Sheri a judgment for attorney’s
fees, expenses, and costs in the amount of $18,923 and provided that she could
enforce it by any means available for the enforcement of a judgment for debt. Later
in the enforcement order, the trial court makes the payment of the judgment by a date
certain one of the conditions of suspension of Ron’s commitment to jail and further
provides that the judgment may be enforced by any means available for the
enforcement of child support, including contempt.
          Ron asserts it was error for the trial court to provide in a condition of
supervision that the attorney’s fees judgment is enforceable by contempt when
portions of it are allocable to items like establishing non-compliance with injunctions,
which under section 106.002 of the Family Code would be enforceable only by means
to collect a judgment for debt and not by contempt. We agree. See Kogel v.
Robertson, No. 03-04-00246, 2005 Tex. App. LEXIS 10028, at *29-31 (Tex.
App.—Austin December 2, 2005, no pet.) (mem. op.) (holding that trial court erred
by characterizing attorney’s fees as “in the nature of child support,” impermissibly
subjecting Kogel to fine or confinement for failure to pay debt because indeterminate
portion of attorney’s fees were for modification suit, fees which are enforceable only
in non-contempt ways to enforce judgment for debt). We sustain issue 10. From the
community supervision section of the body of the enforcement order, we strike from
paragraph three the sentence, “IT IS THEREFORE ORDERED that the attorney’s
fees and costs awarded herein may be enforced by any means available for the
enforcement of child support including contempt, but not including income
withholding.”
 
CONCLUSION 
          We concur with the following sentiments of our sister San Antonio Court of
Appeals in another family law case, A.M., 974 S.W.2d at 867:
This is a difficult case. The trial court’s attempt to look after the needs
and concerns of the [child] is commendable and correct in intent. 
However, the cornerstones of our judicial system are notice and a fair
hearing.

In some ways, however, Ron received neither. 

          Accordingly, to summarize, from the December 17, 2008 enforcement order,
we strike as void the provisions modifying conservatorship and possession provisions
of the trial court’s prior orders; the trial court’s contempt findings in violation 7 (Ron
put the child on Straterra), 9-11 (refusal to give the child medication), 12-27 (removal
of child from school or failure to take child to school); and violations 56-113 (failure
to pay child and medical support). From the probation/community supervision
provisions of the enforcement order, we strike as void the provisions modifying
conservatorship and possession provisions of the trial court’s prior orders, the
provisions requiring Ron to pay a child support arrearage of $1,264.79 by a date
certain, the provisions relative to Ron’s reporting to the CSO, the provision that
community supervision would end upon Ron’s payment of all child support
arrearages, and the provision that the attorney’s fees and costs judgment of $18,923
may be enforced by any means available for the enforcement of child support,
including contempt. We leave the remainder of the December 17, 2008 enforcement
order intact.
 
     Sherry Radack
     Chief Justice


Panel consists of Chief Justice Radack and Justices Alcala and Higley.