### Ex Parte Michael COLEMAN.

### No. 12–93–0094–CV.

Court of Appeals of Texas, Tyler.

July 28, 1993.

Robert D. Bennett and David Griffith, Gilmer, for appellant.

Michael D. Martin, Gilmer, for appellee.

Before RAMEY, C.J., and BILL BASS and HOLCOMB, JJ.

BILL BASS, Justice.

In this original proceeding, Relator Michael Coleman, seeks *habeas corpus* relief from the order of contempt and commitment entered against him on May 10, 1993. On that date, Relator was ordered confined to jail for a period of ten days and was further ordered to remain confined thereafter until he had paid $5,000 to Respondent, $222 as costs, and $500 to Respondent's attorney. We have jurisdiction over this matter pursuant to TEXAS GOVERNMENT CODE ANN. section 22.221(d) (Vernon Supp.1993).

Under the provisions of a "Final Decree of Divorce" dated February 5, 1991, Relator was named Possessory Conservator of the minor child, Chase Thomas Coleman, and ordered to make child support payments as follows:

> It is ORDERED AND DECREED that Michael Allen Coleman is obligated to pay, and subject to the provisions for withholding from earnings for child support speci-

fied below, shall pay to ANITA WAYLEEN COLEMAN child support of *$500.00* per month, with the first payment being due and payable on *March 1, 1991*, and a like payment being due and payable on the same day of each month thereafter....

.      .      .      .      .

> It is ORDERED AND DECREED that all payments shall be made through the District Clerk of Upshur County, Texas, and then remitted by that agency to ANITA WAYLEEN COLEMAN [SUTTON] for the support of the child.

.      .      .      .      .

As additional child support, Relator was ordered to pay, if available for purchase through his employer, medical and health insurance, and one half of the child's unpaid medical bills not paid by insurance.

On or about August 13, 1992, Respondent, Anita Wayleen Sutton, filed a "Motion for Contempt" alleging that Relator had made no payments through the registry of the court but had made payments directly to her through December of 1991. She further alleged that Relator had failed to make the ordered $500.00 monthly payments for the months of January through August of 1992, and that consequently, Relator was in arrears in the amount of $4,000.00. Respondent further alleged that Relator had failed to provide medical insurance coverage on the child or pay one half of the medical expenses incurred on the child's behalf. No specific debt for failure to pay medical expenses was alleged.

### THE DECEMBER 4, 1992 HEARING ON RESPONDENT'S MOTION FOR CONTEMPT

According to the record before us, on December 4, 1992, a hearing was held on Respondent's motion for contempt. At the hearing, Relator, who appeared *pro se,* was informed that because the punishment for contempt included the imposition of a criminal penalty of confinement for up to six months in jail, he was entitled to the appointment of counsel to represent him if he was unable to pay for counsel. Relator stated

that he was unable to pay for a lawyer, but wished to have one appointed. The trial court then stated that before it took Relator's evidence on inability to pay, it would recess the proceedings to give Relator an opportunity to reach an agreement with Respondent and her lawyer. The court, however, stated that if no agreement could be reached, he would entertain Relator's request for a lawyer and, if appropriate, make the appointment and recess the contempt hearing for ten days. After a short recess, the parties returned and read into the record the terms of their agreement. The terms of the agreement were thereafter memorialized in a written order signed by the trial judge on December 16, 1992. The order made no reference to any stipulations of the parties, but instead, contained findings that Relator had contemptuously failed to pay his child support obligations and that he was $5,000 in arrears. The order assessed punishment at "ten days in the County Jail and for as long thereafter as he fails to pay the arrearage on his child support." The order also reduced Relator's monthly child support payments from $500 to $300 per month and provided that the punishment would be suspended as long as Relator made the following payments: (1) $3,000 into the registry of the court by December 25, 1992; (2) $300 on the first of each month; and (3) an additional $100 per month to be applied to the remaining arrearage of $2,568.00. Relator was ordered to make these $100 and $300 payments on January 1, 1993, and on the first of each month thereafter.

## THE MAY 10, 1993 CONTEMPT HEARING

According to the record, the December lump sum and the January 1st payments were not made, and on January 20, 1993, a capias was issued for the arrest of Relator but was canceled after Relator retained counsel and agreed to a hearing on his failure to comply with the trial court's December 16, 1992 order. At the hearing on May 10, 1993, Relator argued that he had not complied with the trial court's order because of inability to pay. Although Relator conceded that in 1987 or 1988 he had received as his and his wife's portion of a personal injury settlement $250,-000, and that at the time of his divorce he had $80,000 in certificates of deposits, he stated that for a variety of reasons, including debts and past due taxes, he had spent the money, liquidated his assets, and was now without adequate funds to make his monthly child support payments. Relator testified that he was employed as a bulldozer and backhoe operator at the rate of $8.00 per hour and that his gross salary was approximately $1,200 per month. He, however, testified that his employment was seasonal due to rain and weather conditions, and that because of his injured knee and past personal injury settlement, he had a difficult time obtaining employment. Relator also testified that he was currently renting a house, and that his wife, who was not employed, owned a car but that he did not own one. With regard to the $3000.00 lump sum he had agreed to pay by December 25, 1992, Relator testified that he was going to *try* to borrow the money from his father, who was also his employer, but that his father's business had been slow. Relator also stated that he lost his job at about that time.

After hearing the evidence, the trial court found Relator to be in contempt of the court's order of December 16, 1992, and ordered him incarcerated for ten days and thereafter until he paid $5,000 to Respondent, $222 in court costs and $500 attorney's fees to Respondent's lawyer. Unlike the order of December 16, 1992, which contained no specific violations of the final decree of divorce committed by Relator, the trial court's order of May 10, 1993, specifically set forth each violation of the December 16 order that Relator committed.

Following the hearing, Relator was taken into custody by the Upshur County Sheriff's Department and placed in confinement. On May 11, 1993, Relator filed this *habeas corpus* action, and pursuant to this Court's order of May 11, 1993, he was released on $1,000 bond pending the writ hearing. Relator's application sets forth three complaints pertaining to the trial court's May 10th order. Because we find merit in Relator's second complaint, we will not address complaint's one and three.

THE "ORDER HOLDING RELATOR IN CONTEMPT FOR FAILURE TO PAY CHILD SUPPORT" ("CONTEMPT ORDER") IS VOID FOR LACK OF SPECIFICITY

By his second complaint, Relator argues that the trial court's "Order Holding Relator in Contempt For Failure to Pay Child Support and For Commitment to County Jail" ("Commitment Order") dated May 10, 1993, is void because it assigns as a basis for contempt, the Contempt Order which failed to comply with the specificity requirements of TEXAS FAMILY CODE ANN. sec. 14.33 (Vernon Supp.1993). Section 14.-33(a) provides:

> (a) Contents. An enforcement order shall contain findings setting out in ordinary and concise language the provisions of the final order, decree, or judgment for which enforcement was sought, the acts or omissions that are the subject of the order, the manner of noncompliance, and the relief awarded by the court. **If the order imposes incarceration or a fine, an enforcement order must contain findings setting out specifically and with particularity or incorporating by reference the provisions of the final order, decree, or judgment for which enforcement was sought and the time date, and place of each occasion on which the respondent failed to comply with the provision and setting out the relief awarded by the court.**

(Emphasis added.)

The Contempt Order neither provides that the parties stipulated to the arrearages found owing, nor sets forth any of the payments for which Relator was found to be in arrears. While Section 14.33(a) does not prohibit stipulations in enforcement orders, it does require specificity and particularity. *Ex parte Sinclair,* 746 S.W.2d 956, 958 (Tex. App.—Houston [14th Dist.] 1988, pet. ref'd). Thus, if a court relies upon the stipulation of parties, its order must either set out the stipulation in its entirety, or incorporate it sufficiently by reference in order to meet the requirements of Section 14.33(a). *Ex parte Haynie,* 793 S.W.2d 317 (Tex.App.—Houston [14th Dist.] 1990, no writ);[1] *Sinclair,* 746 S.W.2d at 958. We sustain Relator's contention that the Contempt Order is void for failure to comply with the requirements of Section 14.33(a). Consequently, the Commitment Order which relied upon Relator's failure to comply with the void Contempt Order is also void.

The relator's application for writ of *habeas corpus* is granted. We order that he be released from bond and discharged from custody.

---

1. Because of the frequent problem of lack of specificity of orders of contempt and commitment, on page 320, the court in *Ex parte Haynie* clearly and succinctly lists the requirements necessary for an enforceable order under section 14.33(a).