In re Charles T. PATILLO.

No. 13–00–575–CV.

Court of Appeals of Texas,
Corpus Christi.

Nov. 9, 2000.

William A. Dudley, Corpus Christi, for Relator.

Ann E. Coover, Coover & Coover, Corpus Christi, Real Party.

Stephanie McCullough, Corpus Christi, pro se.

Before Chief Justice SEERDEN and Justices DORSEY and RODRIGUEZ.

## OPINION

Opinion by Justice DORSEY.

Since his divorce from Stephanie McCullough in 1990, Charles Patillo has accumulated well over $43,000.00 in child support arrears for the support of their two daughters. He was ordered to pay the amount of $700.00 per month by the 117th District Court of Nueces County. Following a lengthy series of legal proceedings, Patillo was incarcerated for various violations of the court's orders relating to payment of child support. His confinement commenced on July 6, 2000. He was sentenced to be confined for a period of ninety days and to remain confined thereafter until he paid certain amounts. Patillo seeks issuance of a writ of habeas corpus.

Although Patillo has provided this Court with numerous legal documents emanating from the lengthy legal history of his ex-wife's attempts to collect child support from him, our discussion is limited to the two orders that directly bear upon the issues raised in this habeas corpus proceeding. Those are the Contempt Order, signed on June 11, 1999, and the Commitment Order, signed on September 7, 2000. The law is well settled that due process requires a court, before imprisoning a person for violating an earlier order, to sign both a written judgment or order of contempt and a written commitment order. *Ex parte Shaklee*, 939 S.W.2d 144, 145 (Tex.1997). The contempt order must clearly state in what respect the court's earlier order has been violated and must clearly specify the punishment imposed by the court. *Id.* A commitment order is the warrant, process, or order by which a court directs a ministerial officer to take custody of a person. *Ex parte Hernandez*, 827 S.W.2d 858 (Tex.1992). The form of a

commitment order is not important, but the substance of one is. *Id.*

This case has become convoluted due to the numerous times the parties appeared in court to resolve this matter, resulting in numerous motions for enforcement, contempt orders, contempt sentences and commitment orders. For the sake of clarity, we only mention the relevant portions of each order.

## THE CONTEMPT ORDER

The Contempt Order was signed by the trial court on June 11, 1999. That Order was the result of a hearing held a few months before the Order was signed. At that hearing, both Charles and Stephanie appeared with counsel, and agreed to the terms contained in the Contempt Order. Charles was found to be in contempt for failing to make twenty-nine child support payments of $350.00 each. The court found that he was able to pay those amounts. The court also found that he failed to pay uninsured medical expenses totaling $1,021.78.

The Order also contained a confirmation of all child support arrears to date. The total amount was $44,081.29. The court also assessed attorney's fees and costs against Patillo in that order.

The Order also contained a criminal contempt and a civil contempt sentence for the violations. The criminal sentence required Patillo to serve ninety days for each violation. The civil sentence required him to remain incarcerated until he made the following payments:

(1) $44,081.29 for the entire amount of child support arrearage;

(2) $1,021.78 for uninsured medical expenses;

(3) $298.58 for costs; and

(4) $3,000.00 for attorney's fees.

Finally, the Order suspended execution of his jail sentences on the condition that he make timely child support payments, as previously ordered, for the next three months. The court scheduled a compliance hearing for three months later to determine whether he had, indeed, made those payments.

We find that certain portions of that Order are void. This Court will issue a writ of habeas corpus if the contempt order is void because it deprives the relator of liberty without due process of law or because it was beyond the power of the court to issue. *Ex parte Swate,* 922 S.W.2d 122, 124 (Tex.1996); *Ex parte Barnett,* 600 S.W.2d 252, 254 (Tex.1980). A judgment is void if it is apparent that the court rendering the judgment had no jurisdiction over the parties, no jurisdiction over the subject matter, no jurisdiction to render the judgment, or no capacity to act as a court. *In re Wiese,* 1 S.W.3d 246, 250 (Tex.App.—Corpus Christi 1999, orig. proceeding). However, the void provisions of that order do not make the entire order void because the sentences are listed separately and capable of being severed from the valid portions of the order. Where a trial court lists each failure to comply with an order separately and assesses a separate punishment for each failure to comply, only the invalid portion of the contempt order is void and the remainder of the contempt order is enforceable.[1]

We find no infirmity in the provisions of the Order assessing ninety days incarceration for criminal contempt. Patillo was found in contempt for twenty-nine separate failures to pay child support and for failing to pay uninsured medical ex-

---

1. *See Ex parte Hudson,* 917 S.W.2d 24, 26–27 (Tex.1996); *Ex parte Carey,* 704 S.W.2d 13, 14 (Tex.1986); *Ex parte Ramzy,* 424 S.W.2d 220, 225–26 (Tex.1968); *In re Aarons,* 10 S.W.3d 833, 834 (Tex.App.—Beaumont 2000, orig. proceeding); *Ex parte Arnold,* 926 S.W.2d 622, 625 (Tex.App.—Beaumont 1996, orig. proceeding); *Ex parte Balderas,* 804 S.W.2d 261, 264 (Tex.App.—Houston [1st Dist.] 1991, orig. proceeding); *Ex parte Linder,* 783 S.W.2d 754, 758 (Tex.App.—Dallas 1990, orig. proceeding); *Ex parte Myrick,* 474 S.W.2d 767, 771 (Tex.Civ.App.—Houston [1st Dist.] 1971, orig. proceeding).

penses as required by the divorce decree. He was sentenced to ninety days for each separate violation, to be served concurrently. That sentence is valid.

■ However, the sentence contained in the Order for civil contempt contains some problems. First, the amount of child support arrearage is incorrect. Patillo may only be confined until he pays the amount of arrearage he was actually held in contempt for failing to pay, which totaled $10,150.00. Accordingly, we reform the Contempt Order to reflect that amount. Similarly, Patillo was not actually held in contempt for failing to pay costs and attorney's fees, but was merely ordered to pay them in the Contempt Order. Thus, we strike the portions of the Order requiring him to remain incarcerated until he pays those amounts.

After striking the void provisions, the Contempt Order is reformed to hold Patillo in contempt for failing to pay twenty-nine child support payments, $10,150.00, and for failing to pay $1,021.78 in uninsured medical expenses. It sentences him to ninety days in jail, and to remain in jail until he pays $10,150.00 in child support arrears and $1,021.78 in uninsured medical expenses.

### The Commitment Order

Although his attorney appeared and stated to the court that Patillo received notice of the hearing, Patillo did not appear at the compliance hearing scheduled in the Contempt Order. Accordingly, after a capias was issued for his arrest, Patillo was again brought before the court. The court revoked the suspension of his sentence under the Contempt Order. The court issued a new order which committed Patillo to jail. We refer to this order as the Commitment Order.

The Commitment Order contained findings that Patillo failed to pay his child support payments due in May and June of

1999 although he had the ability to pay them. Those were the payments that suspension of his sentence was conditioned upon. The Commitment Order also committed Patillo to the custody of the sheriff and sentenced him to ninety days confinement and to remain confined until he pays:

(1) the child support payments that he failed to pay in May and June of 1999;

(2) $44,081.29 for child support arrears, reduced by certain payments made on his behalf by the IRS Intercept;

(3) $1,021.78, for uninsured medical expenses;

(4) $298.58 for costs; and

(5) $3,000.00 for attorney's fees.[2]

■ We have already held that the terms requiring Patillo to be confined until he pays costs and attorney's fees are invalid because he has not been held in contempt for failing to pay those amounts. Accordingly, we strike that portion of the Commitment Order to conform with the Contempt Order.

Likewise, we reform the amount of arrearage to conform with the amount reflected in the modified Contempt Order. The proper amount of arrears is $10,150.00. Additionally, we strike the portion of the Commitment Order relating to the credits for payments made by the IRS. Those credits should be applied to the entire amount of arrearage, and not to the amount that Patillo was held in contempt for failing to pay.

■ Finally, we strike the term of the Commitment Order requiring Patillo to remain incarcerated until he pays the payments that were due in May and June of 1999. Again, Patillo was not found in contempt for failing to pay those payments, but suspension of his *prior* contempt sentence was conditioned upon his making those payments. Therefore, that term of the Commitment Order impermissibly im-

---

**2.** Actually, the Commitment Order was clarified on Motion for New Trial. We read the two Orders together for purposes of this opinion.

poses a greater sentence than was imposed in the Contempt Order. *Swate,* 922 S.W.2d at 124. A contemnor's post-contempt conduct cannot be used to subject him to additional punishment. *Id.*

After striking the appropriate portions, we are left with a Commitment Order that conforms exactly with the Contempt Order. Accordingly, the Commitment Order is reformed to read that Patillo should be held for ninety days, and thereafter until he pays $10,150.00 in child support arrears and $1,021.78 for uninsured medical expenses. We deny his request for habeas corpus relief, but reform the Contempt and Commitment Orders to reflect the appropriate amount of child support arrearage and to strike the void provisions. *See Balderas,* 804 S.W.2d at 264 (where, in habeas corpus proceeding, court of appeals reformed commitment order to reflect a 10–day sentence in place of a 175–day sentence). We find no merit in Patillo's remaining challenges to the validity of the orders.[3]

---

[3]. Patillo has also asserted that he is unable to pay the amounts ordered and that he failed to receive notice of a critical hearing. However, we have found no evidence in the record to support either contention, and refuse to grant relief on either basis.