## In re Steven Arredondo VILLANUEVA, Relator.

### No. 01–01–00186–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Sept. 20, 2001.

Lawrence J. Behrmann, Houston, for Relator.

Georgia Dempster, Houston, for Respondent.

Patsy Young, Houston, for Real Party in Interest.

Panel consists of Justices WILSON, TAFT, and PRICE.*

* The Honorable Frank C. Price, former Justice, Court of Appeals, First District of Texas, sitting by assignment.

## OPINION

WILSON, Justice.

Relator, Steven Arredondo Villanueva, asks this court for habeas corpus relief from a February 22, 2001 contempt order. Pending our final decision of the matter, we ordered relator released upon his posting a sufficient bond.

### Factual Background

On July 27, 1990, the trial court dissolved the marriage of .relator and real party in interest, Debra Ann Skees (Skees) marriage and ordered relator to pay Skees child support of $187.50 on the first and 15th of each month. Subsequently, Skees filed a motion for enforcement of the decree.

On February 22, 2001, the court heard the motion. In addition to evidence of delinquent child support payments, Skees put on testimony of attorney's fees, court costs, and a bond to secure payment of future child support.[1] Relator did not object to this testimony. After the hearing, the trial court signed a contempt order stating in relevant part:

THE COURT FINDS that: ...

(2) on or about July 27, 1990, the court signed a Final Decree of Divorce ... which decree is incorporated herein by reference for all purposes; and

(3) the payment of $16,294.41 paid on or about August 10, 1998, by Respondent/Obligor to Movant/Obligee satisfied the money judgment rendered in the Order Holding Respondent in Contempt for Failure to Pay Child Support and for Commitment and Judgment for Unpaid Child Support signed on or about August 6,.1998, which Order is incorporated herein by reference for all purposes; and

(4) Respondent/Obligor has willfully, intentionally, and contemptuously failed and refused to pay all periodic payments of regular on-going child support in the amounts, on the date, and in the manner ordered by the court, ..., if paying by mail as set out in Exhibit A attached hereto and incorporated herein by reference for all purposes, although Respondent/Obligor had the ability to pay the said child support payments, and Respondent/Obligor is specifically found in contempt for failure to timely pay the payments set out in Exhibit "B" [37 payments of $187.50 each during a period between January 1, 1998 and January 15, 2001] attached hereto and incorporated herein by reference for all purposes; and

(5) Respondent/Obligor's child support arrearage, both principal and prejudgment interest, that has accrued during the period from August 15, 1998, though and including February 22, 2001, is $187.50; and

(6) $1,000 is a reasonable and necessary fee to be paid to Movant/Obligee's attorney of record, PATSY YOUNG, and the court assesses the same as additional child support and orders Respondent/Obligor to pay the same directly to PATSY YOUNG ... and

(7) Movant/Obligee had out-of-pocket court costs of $78.04 which the court assesses against Respondent/Obligor as additional child support, and Respondent/Obligor is ordered to pay the said out-of-pocket court costs to Movant/Obligee through her attorney, PATSY YOUNG ... and the court orders Respondent/Obligor to pay all other costs of court taxed by the Harris County District Clerk in these proceedings, in-

---

1. Relator has not provided us with a copy of Skees's amended motion for enforcement, but the record reflects it contained a request for the posting of a bond.

cluding, but not limited to steno fees and commitment fees.

Based upon the findings above, it is ADJUDGED that Respondent/Obligor, ... is in CONTEMPT OF THIS COURT for each separate violation of the Final Decree of Divorce described above, and it is ORDERED that punishment for each separate violation is assessed, concurrently, at confinement in the county jail ... for a period of 3 days (from the date of commitment until February 25, 2001....

As a prerequisite to coercive contempt, the court finds further that Respondent/Obligor is presently able to pay the child support arrearage due. It is therefore further ORDERED that Respondent/Obligor, ... shall continue to be confined from day to day in the county jail ... after serving the criminal contempt sentence imposed above, until Respondent/Obligor has:

(1) paid $187.50, plus post-judgment interest, to Movant/Obligee ... as child support arrearage; AND

(2) paid $1,000.00, plus post-judgment interest, as attorney's fees incurred in this proceeding directly to PATSY YOUNG, ... AND

(3) paid $78.04, plus post-judgment interest, directly to the attorney ..., AND

(4) paid $63.00 directly to the office of the District Clerk of Harris County ...; AND

(5) Respondent/Obligor is ORDERED to post a bond with the Registry of the court, Trust Fund department of the District Clerk's Office, as security for the payment of child support in the amount of $16,000....

The record shows, and Skees does not dispute: that relator has served the three days of punitive contempt jail time; and that, at the time of the contempt hearing, he was actually $26.00 ahead in regularly scheduled child support payments, although he owed $187.50 in prejudgment interest on previously unpaid child support. Relator has paid the $187.50.

## Analysis

■ A writ of habeas corpus will issue if the contempt order is void because it deprives the relator of liberty without due process of law, see Ex parte Swate, 922 S.W.2d 122, 124 (Tex.1996), or because the order of contempt was beyond the power of the court to issue. See Ex parte Barnett, 600 S.W.2d 252, 254 (Tex.1980).

In issues one and two, relator contends the civil contempt order is void because he was not in civil contempt of any prior order of the court and because the contempt order did not state which portion of a prior order was violated. Specifically, relator complains that before his contempt hearing, there was not an order requiring him to pay child support interest of $187.50, attorney's fees, costs, fees, and a $16,000 bond.

■ The question whether a prior order required relator to pay child support interest of $187.50 is moot. It is undisputed that relator paid the $187.50. Therefore, failure to pay it cannot serve as a ground for relator's civil-coercive confinement. Accordingly, we sever it from the coercive-contempt provision of the trial court's February 22, 2001 contempt order. See In re Patillo, 32 S.W.3d 907, 909 (Tex.App.—Corpus Christi 2000, orig. proceeding) (holding void provisions of coercive contempt order do not make entire order void because they were listed separately and were capable of being severed from valid portions of the order); Ex parte Williams, 866 S.W.2d 751, 753 (Tex.App.—Houston [1st Dist.] 1993, orig. proceeding) (severing identifiable, discrete, void portion of civil-coercive contempt provision of commitment order, and, as modified, leaving remainder of commitment order intact). See

*also Ex parte Carey,* 704 S.W.2d 13, 14 (Tex.1986) (reforming terms of trial court's coercive contempt judgments to modify fine amounts contemnor had to pay to obtain his release so that fine amounts would not exceed statutory limits).

■ Regarding the court costs, attorney's fees, and bond, relator's complains his due process rights to notice were violated because the trial court ordered that he remain incarcerated until he had paid the attorney's fees and court costs and posted the bond, despite the lack of a prior order to put him on notice that he was required to do these things. Relator's failure to object to Skees's evidence on attorney's fees, court costs, and the bond demonstrates that his due process rights to notice were not offended. *See Ex parte McManus,* 589 S.W.2d 790, 792 (Tex.Civ. App.—Dallas 1979, orig. proceeding).

■ We further note that with constitutional due process concerns satisfied, there was ample statutory authority to support the civil-coercive provision requiring the payment of attorney's fees and court costs. It is true that the purpose of such confinement is to persuade the contemnor to comply with a prior court order. *See Ex parte Werblud,* 536 S.W.2d 542, 545 (Tex.1976); *Ex parte Raymer,* 644 S.W.2d 889, 890 (Tex.App.—Amarillo 1982, orig. proceeding). When, as here, however, "the court finds that the respondent has failed to make child support payments, the court *shall* order the respondent to pay the movant's reasonable attorney's fees and all court costs in addition to the ar-

rearage." TEX. FAM.CODE ANN. § 157.167(a) (Vernon Supp.2001) (emphasis added).[2] "Fees and costs ordered under this section may be enforced by any means available for the enforcement of child support, *including contempt.*"[3] TEX. FAM. CODE ANN. § 157.167(c) (Vernon Supp. 2001) (emphasis added). "If the enforcement order imposes incarceration for civil contempt, the order must state the specific conditions on which the respondent may be released from confinement." TEX. FAM. CODE ANN. § 157.166(c) (Vernon Supp. 2001).

We overrule issues one and two, but we reform the contempt order to eliminate the civil-coercive provision relative to the payment of $187.50 because that matter has become moot.

■ With respect to the provision requiring relator to post a bond, in his response to Skees's response to his petition, relator asserts that the trial court did not comply with section 157.109 of the Texas Family Code by not making a finding that relator was employed by an employer not subject to the jurisdiction of the court or for whom income withholding is unworkable or inappropriate. TEX. FAM.CODE ANN. § 157.109(a)(2) (Vernon 1996). Relator acknowledges that *In re Gonzalez,* 993 S.W.2d, 147, 157 (Tex.App.—San Antonio 1999, no pet.) holds that the statute does not by its terms require the court to make a written finding. In this case, however, the trial court did not even verbally make the finding required by the statute. Thus,

---

**2.** It does not matter that relator had paid his child support arrearage at time of contempt hearing. *See Ex parte Boyle,* 545 S.W.2d 25, 27 (Tex.Civ.App.—Houston [1st Dist.] 1977, orig. proceeding) (paying arrearage does not automatically purge relator of contempt).

**3.** *See, e.g. Ex parte Savelle,* 398 S.W.2d 918, 920 (Tex.1966); *Ex parte Helms,* 152 Tex. 480, 259 S.W.2d 184, 185, 188–89 (1953); *Ex parte*

*Miller,* 604 S.W.2d 324, 326 (Tex.Civ.App.— Dallas 1980, orig. proceeding); *Karten v. Snyder,* 597 S.W.2d, 561, 562 (Tex.Civ.App.—Fort Worth, 1980, no writ); *Boyle,* 545 S.W.2d at 27–28; *but see In re Patillo,* 32 S.W.3d 907 (Tex.App.—Corpus Christi 2000, orig. proceeding) (without citation to supporting authority, holding void civil-coercive contempt provision that Patillo remain in jail until he paid costs and attorney's fees).

the trial court was without authority to render the order, and it is void. *See Ex parte Coleman,* 864 S.W.2d 573, 576 (Tex. App.—Tyler 1993, orig. proceeding) (holding void contempt order that did not comply with former Texas Family Code section 14.33(a) because the trial court did not make the required findings of the judgment for which enforcement was sought and the time, date, and place of each occasion on which respondent failed to comply with judgment and relief awarded by the court).

Relator asserts that because this provision is void, the entire contempt order is void, citing *Ex parte Guetersloh,* 935 S.W.2d 110 (Tex.1996). In *Guetersloh,* the relator was attacking a punitive contempt order that he be punished for 180 days. *Id.* at 111. The supreme court held that because it could not segregate Guetersloh's permissible conduct from his impermissible conduct, the entire 180 day sentence had to be struck. This case is distinguishable from *Guetersloh* in that the order challenged is not a punitive one for a determinate amount of days covering unsegregatable, permissible (relator's building activity before the injunction) and impermissible conduct (relator's building activity after the injunction). The order challenged here is a civil-coercive one for an indeterminate time, designed to compel segregatable actions on the part of relator. Unlike in *Guetersloh,* we are not faced with speculating what portion of the 180 days is allocable to the permissible activity and what portion is allocable to the impermissible activity. Instead we can reform the civil-coercive provision to provide that relator shall remain incarcerated until he performs three, distinct, discrete, segregatable acts (paying the attorney's fees, court costs, and district clerk fees) rather than five such items (paying the $187.50, attorney's fees, court costs, district clerk's fees, and posting a $16,000 bond). *See Patillo,* 32 S.W.3d at 909; *Williams,* 866 S.W.2d at 753.

## Conclusion

We reform the civil-coercive provisions of the contempt order to eliminate the provision relative to payment of the $187.50, which has become moot. We further reform the civil-coercive portion of the contempt order by eliminating the void provision ordering relator to remain incarcerated until he posts a $16,000 bond. All further relief is denied. We remand relator to the custody of the sheriff to resume his confinement until he has complied with the civil-coercive provisions of the contempt order as herein reformed, which includes payment of the attorney's fees, court costs, and district clerk fees.