

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-18-00980-CV

**IN RE** Crystal Gayle **CALDWELL-BAYS**

Original Habeas Proceeding[1]

Opinion by:     Irene Rios, Justice

Sitting:         Sandee Bryan Marion, Chief Justice
                    Patricia O. Alvarez, Justice
                    Irene Rios, Justice

Delivered and Filed: March 27, 2019

PETITION FOR WRIT OF HABEAS CORPUS DENIED

In an opinion and order dated March 6, 2019, we denied relator's petition for writ of habeas corpus. Relator, Crystal Gayle Caldwell-Bays ("Crystal"), filed a motion for rehearing asserting this court erred in holding she waived her right to complain that the Standing Orders entered by the trial court were void because the trial court failed to satisfy the requirements of Texas Family Code section 6.502. We deny the motion for rehearing; however, we withdraw our opinion and order of March 6, 2019 and issue this opinion and order in their place to re-address the merits of relator's arguments on this issue.

Relator filed a petition for writ of habeas corpus asserting the trial court abused its discretion by entering an order holding her in both civil and criminal contempt and confining her

---

[1] This proceeding arises out of Cause No. 16-237CCL, styled *In the Matter of the Marriage of Crystal Gayle Caldwell-Bays and Marvin Bays and In the Interest of B.J.B., B.B.B., J.C.B., and M.B.B., Children*, pending in the 451st Judicial District Court, Kendall County, Texas, the Honorable Michael P. Peden presiding.

to county jail. The dispute centers on whether Crystal violated the terms of two Standing Orders by "encumbering" real property that she owns. Because we conclude Crystal violated the terms of the Standing Orders, we deny her petition for writ of habeas corpus.

## BACKGROUND

On August 19, 2014, Crystal acquired an interest in property located at 916 Lytle Street, Kerrville, Texas ("the Lytle Property"). On September 30, 2014, Crystal acquired an interest in property located at 160 Cherry Bluff Ridge, Comfort, Texas ("the Cherry Bluff Ridge Property").

On May 25, 2016, Crystal filed an original petition for divorce in which she contended she and the real party in interest, Marvin Bays, entered into a common law marriage on or about December 14, 2014. In her petition, Crystal included a suit affecting the parent-child relationship. Although Marvin denied the existence of a marriage, he also filed a counter-petition in a suit affecting the parent-child relationship. On April 26, 2018, Marvin filed a motion for partial summary judgment asking the trial court to render a take-nothing judgment on Crystal's claim to establish an informal marriage or, alternatively, to declare that no informal marriage existed. Less than a month later, Crystal amended her petition to contend the couple either entered into a marriage between April 8, 2015 and September 15, 2015 or entered into a purported marriage on or about December 14, 2014.

In 2017, the trial court signed two Standing Orders. Both orders state: "No party to this lawsuit has requested this order. Rather, this order is a standing order . . . that [applies] in every divorce suit and every suit affecting the parent-child relationship . . . ." The first order signed was the "Standing Order Regarding Property and Conduct of Parties in Divorce and Suits Affecting the Parent-Child Relationship" ("the Property Standing Order"). Pertinent to this proceeding, the Property Standing Order states as follows:

3.   PRESERVATION OF PROPERTY AND USE OF FUNDS DURING DIVORCE CASE.
If this is a divorce case, both parties to the marriage are ORDERED to refrain from doing the following acts:

> 3.1   Destroying, removing, concealing, encumbering, transferring, or otherwise harming or reducing the value of the property of one or both parties.
> . . .
> 3.5   Selling, transferring, assigning, mortgaging, encumbering, or in any other manner, alienating any of the property of the other party, whether personal property or real estate property, and whether separate or community, except as specifically authorized by this Order.
> . . .

6.   SPECIFIC AUTHORIZATIONS IN DIVORCE CASE.
If this is a divorce case, both parties to the marriage are specifically authorized to do the following:

> . . .
>
> 6.2   To make expenditures and incur indebtedness for reasonable and necessary living expenses for food, clothing, shelter, transportation and medical care.
> . . .

The second order was signed about seven months later and is entitled "Standing Order Regarding Children, Property and Conduct of the Parties" ("the Children Standing Order").

Pertinent to this proceeding, the Children Standing Order states as follows:

3.   PRESERVATION OF PROPERTY AND USE OF FUNDS DURING DIVORCE CASE.
If this is a divorce case, both parties to the marriage are ORDERED to refrain from doing the following acts:

> 3.1   Destroying, removing, concealing, encumbering, transferring, or otherwise harming or reducing the value of the property of one or both of the parties.

Therefore, both Standing Orders prohibited the parties from "encumbering . . . the property of one or both parties." On February 12, 2018, Crystal executed a Deed of Trust on the Lytle Property to secure the payment of a $15,000 retainer to her attorneys, Fullenweider Wilhite, P.C., and the payment of all fees and expenses due or coming due to her attorneys. A few weeks

later, Crystal filed a motion asking leave to sell the Lytle Property. In this motion, she argued the Property Standing Order authorized her to sell real property to pay her attorneys. Because Marvin opposed the motion, Fullenweider Wilhite released the deed of trust "out of an abundance of caution." On May 4, 2018, the trial court signed an order on Crystal's motion to sell ("the Order to Sell Property"), which states as follows:

(1)     The property and all improvements . . . shall be sold under the following terms and conditions:
(2)     [Crystal] shall list the property with a duly licensed real estate broker having sales experience in the area where the property is located, provided further that the real estate broker shall be an active member in the Multiple Listing Service with the Kerrville Board of Realtors;
(3)     [Crystal and Marvin] shall both be notified on any and all showings, offers, and contracts; and
(4)     The net sales proceeds . . . shall be deposited into the Registry of this Court until further order of the Court.

On May 14, 2018, Crystal and her attorneys entered into an Amended Agreement in which she represented she was the sole owner of the Lytle Property and the Cherry Bluff Ridge Property. She agreed these properties would serve as security for attorney's fees and costs due or that may come due, and she agreed to execute all documents necessary to effectuate the agreement. Additionally, she agreed that if she had an outstanding balance for the payment of fees and costs as of July 31, 2018, she would immediately place the Cherry Bluff Ridge Property on the market to be sold.

On May 30, 2018, the trial court granted Marvin's motion for partial summary judgment. On August 28, 2018, Crystal executed a Deed of Trust on the Cherry Bluff Ridge Property to secure payments owed to her attorneys. A month later, Marvin filed a "Motion for Enforcement by Contempt." Marvin alleged the following two violations of the decretal paragraphs in both Standing Orders that ordered the parties to refrain from "destroying, removing, concealing,

encumbering, transferring, or otherwise harming or reducing the value of the property of one or both parties":

> Violation 1. On May 14, 2018, Crystal knowingly violated the Court's Order by executing an "Amended Agreement" with Fullenweider Wilhite, PC once again, agreeing to encumber the properties located at [Lytle Street] and [Cherry Bluff Ridge] in violation of the Standing Orders.

> Violation 2. On August 28, 2018, Crystal knowingly violated the Court's Order by encumbering and transferring [the Cherry Bluff Ridge Property] by Deed of Trust to Patrick Upton, Trustee, for Fullenweider Wilhite, P.C. as beneficiary in violation of the Standing Orders.

Marvin also alleged the following two violations of the decretal paragraph of the Order to Sell Property that required Crystal to list the property; provide notice of any showings, offers, or contracts; and deposit the net sales proceeds into the court's registry:

> Violation 3. On and after May 4, 2018, Crystal knowingly violated the Court's Order by failing to list the property located at [Lytle Street].

> Violation 4. On and after May 4, 2018, Crystal knowingly violated the Court's order by failing to notify [Marvin] of any and all showings, offers, and contracts.

On December 10, 2018, the trial court conducted a hearing on Marvin's "Motion for Enforcement by Contempt." That same day, the trial court signed an "Order Holding [Crystal] in Contempt, Granting Judgment, and for Commitment to County Jail" ("the Contempt Order"). The trial court found Crystal guilty of the four violations alleged by Marvin and held Crystal in both criminal and civil contempt for each separate violation. For criminal contempt, the trial court ordered Crystal held in county jail for three days for each violation, beginning at 9:00 a.m. on December 20, 2018, each period of confinement to run concurrently. For civil contempt, the trial court ordered Crystal confined to county jail for a period not to exceed eighteen months or until she complied with the following order: obtain from Patrick Upton, Trustee, for the benefit of Fullenweider Wilhite, P.C., a full and unconditional release of the Deed of Trust encumbering the Cherry Bluff Ridge Property "and all other liens" on the Cherry Bluff Ridge Property and the Lytle

Property. The trial court also signed a Writ of Commitment commanding any sheriff or constable to take Crystal into custody.

Crystal filed her petition for writ of habeas corpus in this court on Friday, December 21, 2018, at 3:59 p.m. Due to the late hour and impending Christmas break, this court issued an order on December 21st requesting a response and ordering Crystal released from custody pending final resolution of her petition and the payment of a $4,500.00 cash bond. Marvin subsequently filed a response, to which Crystal replied.

In her petition, Crystal raises several complaints about the Contempt Order. Her complaints, generally, are that the Standing Orders and Order to Sell Property no longer applied after the informal marriage portion of the case was disposed of via the partial summary judgment; the Standing Orders and Order to Sell Property are not reasonably specific; there is no evidence she violated the Standing Orders and Order to Sell Property; and the Contempt Order is void.

**STANDARD OF REVIEW**

The purpose of a writ of habeas corpus is not to determine the guilt of the contemnor. *See Ex parte Gordon*, 584 S.W.2d 686, 688 (Tex. 1979) (orig. proceeding). A court will issue a writ of habeas corpus if the contempt order is void. *Id.* "An order is void if it is beyond the power of the court to enter it, or if it deprives the contemnor of liberty without due process of law." *In re Stein*, 331 S.W.3d 538, 540 (Tex. App.—Houston [14th Dist.] 2011, orig. proceeding) (per curiam). We do not weigh the evidence in reviewing the trial court's ruling; instead, we determine only if there is no evidence to legitimize the trial court's finding of contempt. *Ex parte Chambers*, 898 S.W.2d 257, 261-62 (Tex. 1995) (orig. proceeding).

Contempt is classified into either civil or criminal contempt. *In re Reece*, 341 S.W.3d 360, 365 (Tex. 2011) (orig. proceeding). The distinction between civil and criminal contempt is based on the nature and purpose of the penalty imposed. Civil contempt is remedial and coercive in

nature—the confinement is conditioned on obedience with the court's order. *Id.* Criminal contempt, on the other hand, is punitive in nature, and the court punishes the contemnor for a completed act or omission rather than ordering her confined to compel compliance with an existing order. *Id.* "A criminal contempt conviction for disobedience to a court order requires proof beyond a reasonable doubt of: (1) a reasonably specific order; (2) a violation of the order; and (3) the willful intent to violate the order." *Chambers*, 898 S.W.2d at 259.

"To be enforceable by contempt, [the underlying order] must set out the terms for compliance in clear and unambiguous terms." *Ex parte Brister*, 801 S.W.2d 833, 834 (Tex. 1990) (orig. proceeding). "The [underlying order] must also clearly order the party to perform the required acts." *Id.* The order must be sufficiently specific such that the person charged with obeying it will readily know exactly what duties and obligations are imposed. *Chambers*, 898 S.W.2d at 260. If the court's underlying order requires inferences or conclusions about whether particular conduct is encompassed by the order and concerning which reasonable persons might differ, the order is insufficient to support a contempt judgment. *Id.*

Contempt orders involving confinement may be reviewed by writ of habeas corpus. *Tracy v. Tracy*, 219 S.W.3d 527, 530 (Tex. App.—Dallas 2007, no pet.); *see also In re Long*, 984 S.W.2d 623, 625 (Tex. 1999) (orig. proceeding) (per curiam); *Ex parte Williams*, 690 S.W.2d 243, 243 n.1 (Tex. 1985) (orig. proceeding). Contempt orders are not appealable and, as such, no adequate remedy by appeal exists. *In re Braden*, 483 S.W.3d 659, 662 (Tex. App.—Houston [14th Dist.] 2015, orig. proceeding) (per curiam). Because Crystal does not have an adequate remedy by appeal, the only remaining question is whether she has shown the contempt order is unenforceable. If the trial court's contempt order in this case is not void, then the trial court did not abuse its discretion. *In re Office of Atty. Gen.*, 422 S.W.3d 623, 628 (Tex. 2013) (orig. proceeding).

**WHETHER THE STANDING ORDERS APPLY TO AN *ALLEGED* MARRIAGE**

Crystal's first three issues challenge the Standing Orders as they apply to an alleged marriage. She first asserts there is no evidence she violated the Standing Orders because they apply only to "both parties to the marriage" and there is no indication they apply to "both parties to an *alleged* marriage." Crystal contends that because Marvin has consistently denied the existence of any marriage and the trial court has not adjudicated them to be married, the orders do not apply. Alternatively, Crystal asserts that if the Standing Orders do apply, they became inapplicable after the summary judgment disposed of the issue of an informal marriage. According to Crystal, the following language in the Standing Orders, when read together, contemplate that the orders terminated on May 30, 2018, when the trial court rendered the partial summary judgment:

> 7.      SERVICE AND APPLICATION OF THIS ORDER.
>                                          . . .
> 7.2  This Order is effective upon the filing of the original petition and shall remain in full force and effect as a Temporary Restraining Order for fourteen days after the date of the filing of the original petition. If no party contests this Order by presenting evidence at a hearing on or before fourteen days after the date of the filing of the original petition, this Order shall continue in full force and effect as a Temporary Injunction until further Order of the Court. *This entire Order will terminate and will no longer be effective once the Court signs a final Order.* [Emphasis added.]

> 8.      EFFECT OF OTHER COURT ORDERS. If any part of this Order is different from any part of a Protective Order that has already been entered or is later entered, the Protective Order provisions prevail. Any part of this Order not changed by some later Order *remains in full force and effect until the Court signs a Final Decree.* [Emphasis added.]

Crystal asserts that because the Standing Orders terminated on May 30, 2018, they did not apply to the deed of trust she executed three months later. Finally, Crystal relies on the above arguments to assert that a reasonable interpretation of the Standing Orders is that they no longer

applied to the informal marriage case at the time the deed of trust was executed and, therefore, she was no longer precluded from taking the actions that she took.

We do not agree with Crystal's arguments. Crystal's own pleadings reveal this case to be a "divorce case" in which she alleged she and Marvin were "married," as pled in both her original petition and her amended petition. "The allegations contained in the pleadings determine the nature and character of a suit." *Bobby Smith Brokerage, Inc. v. Bones*, 741 S.W.2d 621, 622 (Tex. App.—Fort Worth 1987, no writ); *see also Rankin v. Bateman*, 686 S.W.2d 707, 712 (Tex. App.—San Antonio 1985, writ ref'd n.r.e.) (same). Marvin had a right to assume that the case made by the pleadings was the case he was called upon to defend. *See Bones*, 741 S.W.2d at 622. Marvin defended against Crystal's case, in part, by denying the existence of a marriage. Therefore, Marvin's denial of any marriage did not change the nature of the case filed by Crystal. Nor did the partial summary judgment affect the applicability of the Standing Orders. The partial summary judgment is an interlocutory order that is not yet final; therefore, there is no "final judgment" or "final decree" on the issue of whether the parties were married. Finally, Crystal's argument ignores the pending suit affecting the parent-child relationship and the Children Standing Order that prohibits both parties from "encumbering . . . the value of the property of one or both of the parties." Accordingly, we conclude the Standing Orders apply to the case filed by Crystal.

**ENCUMBRANCE OF PROPERTY**

Both Standing Orders provided as follows:

> If this is a divorce case, both parties to the marriage are ORDERED to refrain from doing the following acts:
>
> > 3.1 Destroying, removing, concealing, encumbering, transferring, or otherwise harming or reducing the value of the property of one or both parties.

The Amended Agreement provides in pertinent part that the two properties "shall serve as security for the payment of attorney fees and cost" and Crystal "agree[d] to execute any and all documents necessary to effectuate [the] Amended Agreement."

The trial court found the following two violations:

Violation 1. On May 14, 2018, Crystal knowingly violated the Court's Order by executing an "Amended Agreement" with Fullenweider Wilhite, PC once again, agreeing to encumber the properties located at [Lytle Street] and [Cherry Bluff Ridge] in violation of the Standing Orders.

Violation 2. On August 28, 2018, Crystal knowingly violated the Court's Order by encumbering and transferring [the Cherry Bluff Ridge Property] by Deed of Trust to Patrick Upton, Trustee, for Fullenweider Wilhite, P.C. as beneficiary in violation of the Standing Orders.

In her fourth issue regarding Violation 1, Crystal asserts there is no evidence she violated the Standing Orders' prohibition against encumbering the Cherry Bluff Ridge Property or the Lytle Property because she did not "encumber" the properties, she merely "agreed" to encumber the properties. Crystal contends the Amended Agreement does not constitute a violation of paragraph 3.1's prohibition against "encumbering" property because the agreement does not constitute an actual encumbrance of the properties. Other than these conclusory contentions, Crystal provides no authoritative support for her argument as to Violation 1. Therefore, this issue is inadequately briefed.

Execution of the August 28, 2018 Deed of Trust was the subject of Violation 2. Crystal does not dispute that the August 28, 2018 Deed of Trust is an encumbrance of the Cherry Bluff Ridge Property, and, at the hearing, she admitted she executed a deed of trust in favor of her attorneys. The deed states, in pertinent part, as follows:

This Deed of Trust secures: [1] the payment of the retainer due to Fullenweider Wilhite, P.C., in the amount of $15,000.00, as set forth in the Agreement; [2] the payment of all fees and expenses due to Fullenweider Wilhite, P.C., under the terms of the Amended Agreement at the time this this [sic] Deed of

Trust is executed, [3] all fees and expenses that come due under the terms of the Amended Agreement; and [4] the performance of covenants and agreements under this Deed of Trust.

. . .

This deed of trust is given to comply with the Amended Agreement entered into between Crystal Bays and Fullenweider Wilhite, P.C., on May 21, 2018, wherein Fullenweider Wilhite, P.C., agreed to provide legal services pursuant to the terms of the Amended Agreement and Crystal Bays agreed to pay the firm in accord with the terms of the Amended Agreement as well as provide the property located at 160 Cherry Bluff Ridge, N. Comfort, Texas 78013, as well as provide such property as security for the payment of fees.

In support of her argument regarding Violation 2, Crystal relies on her arguments under her first three issues, which challenged whether the Standing Orders apply to an alleged marriage. Because we conclude Crystal's first three arguments lack merit, we hold the August 28, 2018 Deed of Trust is evidence to legitimize the trial court's finding of contempt based on Violation 2.

### "OTHER LIENS"

The Contempt Order required Crystal to obtain from the trustee, for the benefit of Fullenweider Wilhite, "a full and unconditional release of the Deed of Trust encumbering the [Cherry Bluff Ridge Property] and all other liens on [the Cherry Bluff Ridge Property and the Lytle Property] in favor of Fullenweider Wilhite, P.C." In her ninth issue, Crystal asserts the Contempt Order as it relates to releasing "other liens" is void because it goes beyond the scope of Marvin's motion to enforce. In her tenth and eleventh issues, Crystal asserts the Contempt Order is not specific as to what "other liens" she must release and there is no evidence that her attorneys have "other liens on [the Cherry Bluff Ridge Property] and [the Lytle Property]."

Although the Amended Agreement clearly states Crystal's two properties "shall serve as security for the payment of attorney's fees and costs" and that Crystal "agree[d] to execute any and all documents necessary to effectuate this Amended Agreement," there is no evidence Fullenweider Wilhite held any liens or encumbrances on any property other than the Deed of Trust

on the Cherry Bluff Ridge Property. Therefore, we conclude that portion of the Contempt Order requiring Crystal to obtain a release of "other liens" on the Cherry Bluff Ridge Property and the Lytle Property is not enforceable.

## FAILURE TO LIST AND FAILURE TO PROVIDE NOTICE

The Order to Sell Property states:

(1)     The property and all improvements . . . shall be sold under the following terms and conditions:
(2)     [Crystal] shall list the property with a duly licensed real estate broker having sales experience in the area where the property is located, provided further that the real estate broker shall be an active member in the Multiple Listing Service with the Kerrville Board of Realtors;
(3)     [Crystal and Marvin] shall both be notified on any and all showings, offers, and contracts; . . . .

The trial court found Crystal violated this order as follows:

Violation 3.  On and after May 4, 2018, Crystal knowingly violated the Court's [Order to Sell Property] by failing to list the property located at [Lytle Street].

Violation 4.  On and after May 4, 2018, Crystal knowingly violated the Court's [Order to Sell Property] by failing to notify [Marvin] of any and all showings, offers, and contracts.

In her fifth issue, Crystal asserts there is no evidence in the record to legitimize the trial court's finding of contempt based on Violation 3 and Violation 4 because no evidence was adduced regarding what actions, if any, were taken by Crystal.[2]  In her sixth issue, Crystal asserts the Order to Sell is not specific enough to be enforced by contempt because the order does not state a date or time by which she was required to list the property and does not state the manner by which she was required to notify Marvin of showings, offers, and contracts.  We agree sections 2 and 3 of the Order to Sell Property did not clearly and unambiguously set forth Crystal's duties and

---

[2] In his response to Crystal's petition, Marvin states he "does not oppose a determination that Crystal should not be held in contempt for not listing the real estate for sale."

obligations.   Therefore, sections 2 and 3 are not enforceable by contempt.   Accordingly, we conclude the Contempt Order with regard to Violation 3 and Violation 4 is not enforceable.

### IS CRYSTAL AUTHORIZED TO TAKE THE REQUIRED ACTION?

The portion of the Contempt Order holding Crystal in civil contempt ordered Crystal to obtain an unconditional release of the Deed of Trust.   In her eight issue, Crystal asserts the Contempt Order is void because she does not have the means to comply.

"A judgment of contempt imposing a coercive restraint is void if the conditions for purging the contempt are impossible of performance." *Ex parte Ramzy*, 424 S.W.2d 220, 223 (Tex. 1968) (orig. proceeding); *Ex parte Jones*, 602 S.W.2d 400, 402 (Tex. Civ. App.—Waco 1980, orig. proceeding) (same).   "Unless the contemnor has the means by which [she] may purge [herself] of the contempt, [she] must be discharged from prison." *Ramzy*, 424 S.W.2d at 224.   "But the burden is on the contemnor to establish in the trial court that [she] cannot perform the act necessary to purge [herself]." *Jones*, 602 S.W.2d at 402; *see also Ramzy*, 424 S.W.2d at 224 ("we treat the contempt order as void if the evidence offered at the hearing or hearings conclusively establishes that at the time of the contempt hearing it was not within the power of the Relator to perform the act or acts which would release him from the punishment authorized by the court's judgment").

Crystal did not argue at the hearing, much less present any evidence, that she was unable to obtain an unconditional release of the Deed of Trust.[3]   For the first time in her writ of habeas corpus, Crystal contends the Deed of Trust prevented her from obtaining a release without the

---

[3] In her reply brief, Crystal contends she could not present evidence at the contempt hearing because the Contempt Order was not yet in effect; therefore, she did not know how to comply until after the trial court issued its ruling.   At the hearing, Marvin's lawyer asked that any sentence of incarceration be suspended to give Crystal "an opportunity to visit with her lawyers, talk to her lawyers and see if she can get them to release the deed of trust . . . ."   After the trial court found Crystal in contempt, the parties agreed to proceed to sentencing.   At no time, did Crystal's attorney raise the issue that she could not obtain a release of the deed.

trustee's consent. Because Crystal's citations to the record are imprecise, we believe she is referring to the following language in the deed:

> If Grantor [Crystal] transfers any part of the property without Beneficiary's [the law firm] prior written consent, Beneficiary may involve any remedies provided in this deed of trust for default.

We do not believe this language makes it "impossible for Crystal to unilaterally obtain and secure a release of the Deed of Trust from the trustee without the trustee's consent" as alleged by Crystal in her writ. Also, because this argument was not raised before the trial court, the trial court was not given an opportunity to interpret this language. Therefore, we conclude Crystal did not satisfy her burden to establish *in the trial court* that she cannot perform the act necessary to purge herself of contempt.

## WAS CRYSTAL IDENTIFIED?

In her twelfth issue, Crystal asserts the Contempt Order is void because she was never identified as being the person who was in contempt. Except for this single sentence and general citations to the law, Crystal does not elaborate on her argument. Marvin's "Motion for Enforcement" identified Crystal and alleged she violated the Standing Orders. The Contempt Order also identifies Crystal as the person "guilty" of the violations alleged by Marvin. Therefore, Crystal's contention does not have merit.

## TEXAS FAMILY CODE SECTION 6.502

In her thirteenth issue, Crystal contends the Contempt Order is void because it was based on violations of the Standing Orders that were entered without the trial court hearing any evidence. Crystal relies on Family Code section 6.502, which provides, in part, as follows:

> While a suit for dissolution of a marriage is pending and on the motion of a party or on the court's own motion after notice and hearing, the court may render

an appropriate order, including the granting of a temporary injunction for the preservation of the property . . . .

TEX. FAM. CODE § 6.502(a).

Crystal asserts the Standing Orders are void because the trial court did not conduct an adversarial hearing with notice <u>before</u> entering the orders. Instead, according to Crystal, the court violated section 6.502(a) by unilaterally issuing the orders first and then giving the parties notice and an opportunity to contest the orders. We disagree with Crystal's argument.

Section 6.502(a) applies to the granting of a temporary injunction while a suit for dissolution of a marriage is pending. However, Family Code section 6.501 applies to a temporary restraining order entered "after the filing of a suit for dissolution of a marriage," and provides in pertinent part as follows:

> (a) After the filing of a suit for dissolution of a marriage, on the motion of a party or on the court's own motion, *the court may grant a temporary restraining order without notice to the adverse party* for the preservation of the property and for the protection of the parties as necessary, including an order prohibiting one or both parties from:
> . . .
> (11) except as specifically authorized by the court:
> (A) selling, transferring, assigning, mortgaging, encumbering, or in any other manner alienating any of the property of the parties or either party, regardless of whether the property is:
> (i) personal property, real property, or intellectual property; or
> (ii) separate or community property . . . .

*Id.* § 6.501(a)(11) (emphasis added).

Here, pursuant to section 6.501(a), the trial court had the authority to enter the Standing Orders on its own motion without notice or hearing. Both Standing Orders provide:

> 7.2 This Order is effective upon the filing of the original petition and shall remain in full force and effect as a Temporary Restraining Order for fourteen days after the date of the filing of the original petition. If no party contests this Order by presenting evidence at a hearing on or before fourteen days after the date of the filing of the original petition, this Order shall continue in full force and effect as a Temporary Injunction until further Order of this Court. This entire Order will terminate and will no longer be effective once the Court signs a final Order.

The Standing Orders thus gave notice to the parties that the temporary restraining order would become a temporary injunction if neither party contested the order. After fourteen days from the filing of Crystal's original petition, both parties were entitled to an evidentiary hearing to contest the Standing Orders, which satisfied section 6.502's requirement that each party "be afforded the normal right to participate in an *adversarial* hearing, rather than merely the right to be present as a spectator at an ex parte hearing." *Post v. Garza*, 867 S.W.2d 88, 90 (Tex. App.—Corpus Christi 1993, orig. proceeding) (interpreting former version of statute and holding trial court abused its discretion by refusing to allow Post to participate through cross-examination and the presentation of his own evidence). *Id.*

Crystal attached the Property Standing Order to her original petition for divorce[4] and she relied on the Property Standing Order in her Motion for Leave to Sell Property. In her petition for writ of habeas corpus, Crystal does not contend she or Marvin contested the Standing Orders on or before fourteen days after Crystal filed her original petition. Therefore, we conclude the trial court did not violate section 6.502 because both parties were afforded notice and a hearing prior to the temporary restraining order continuing in full force and effect as a temporary injunction. Accordingly, the Standing Orders are not void on the ground argued by Crystal.

## ENTIRE ORDER IS NOT VOID

In her seventh issue, Crystal asserts the entire Contempt Order is void because it assesses one punishment for multiple acts of contempt. Crystal complains only about the criminal contempt section of the order.[5] Crystal relies on *In re Henry*, 154 S.W.3d 594 (Tex. 2005) (orig. proceeding)

---

[4] Both Standing Orders also state: "The Petitioner shall attach a copy of this order to the original petition and to each copy of the petition. At the time the petition is filed, if the Petitioner has failed to attach a copy of this Order to the petition and any copy of the petition, the Clerk shall ensure that a copy of this Order is attached to the petition and every copy of the petition presented."

[5] Crystal does not challenge the civil contempt portion of the order.

(per curiam), which held, "'If one punishment is assessed for multiple acts of contempt, and one of those acts is not punishable by contempt, the entire judgment is void.'" *Id.* at 598 (quoting *Ex parte Davila*, 718 S.W.2d 281, 282 (Tex. 1986) (orig. proceeding) (per curiam)).

In *Henry*, the trial court signed an order finding Paul guilty of contempt for failure to pay past-due real estate taxes and of 359 separate acts of contempt for failure to pay child support. The trial court imposed a criminal contempt sentence of confinement in the county jail for seventy-two hours and a civil contempt sentence requiring that Paul remain confined until he paid his former wife $30,141.42, which included amounts for past-due child support, interest, past-due property taxes, and attorney's fees. *Id.* at 595-96. In his petition for writ of habeas corpus, Paul asserted the entire commitment order was void because it assessed one coercive punishment for all acts of civil contempt when at least one of those acts was not punishable by confinement. *Id.* at 598. Paul's former wife argued any void portions of the commitment order could be severed from the valid portions. *Id.* The Supreme Court distinguished the cases relied on by the wife, noting, some of "those cases [were] distinguishable in that the contempt and commitment orders in issue . . . separately listed the punishment for each contemptuous act . . . ." *Id.* The Court determined it could not reform the civil commitment order or sever any portion thereof because the order did not allocate the $30,131.42 judgment based on separate contemptuous acts and contained no findings to support a lesser coercive contempt sentence. *Id.* Accordingly, the Court held the commitment order was void. *Id.*

This case is distinguishable from *Henry* because the Contempt Order here does not impose a single coercive punishment for all acts of contempt. The order specifies the acts directly related to the contempt findings. The trial court found Crystal "guilty of separate violations of the" Standing Orders. Under the section holding her in criminal contempt, the trial court ordered Crystal "committed to the county jail of Kendall County, Texas, for a period of 3 days *for each*

*separate violation* enumerated above." [Emphasis added.] The court ordered "that *each period of confinement* assessed in [the] order shall run and be satisfied concurrent[ly]." [Emphasis added.]

Void provisions of a contempt order do not make the entire order void if the sentences are listed separately and capable of being severed from the valid portions of the order. *In re Patillo*, 32 S.W.3d 907, 909 (Tex. App.—Corpus Christi 2000, orig. proceeding); *Ex parte Linder*, 783 S.W.2d 754, 758 (Tex. App.—Dallas 1990, orig. proceeding). "Where a trial court lists each failure to comply with an order separately and assesses a separate punishment for each failure to comply, only the invalid portion of the contempt order is void and the remainder of the contempt order is enforceable." *Patillo*, 32 S.W.3d at 909. Here, the Contempt Order does not list each failure to comply and separately assess a punishment for each failure to comply. However, when read in its entirety, the Contempt Order lists four separate violations and assesses a period of confinement *for each violation*. Under such circumstances, any invalid portion of the Contempt Order does not mean that the entire order is void. "The invalid portion may be severed, and the valid portion retained." *Linder*, 783 S.W.2d at 758.

As explained above, we conclude the portions of the Contempt Order that are invalid are (1) the section ordering Crystal to obtain a release of "all other liens" on both properties and (2) the section holding Crystal in contempt for Violation 3 and Violation 4. But, because these portions of the order are capable of being severed from the valid portions of the order, "only the invalid portion of the contempt order is void and the remainder of the contempt order is enforceable." *Patillo*, 32 S.W.3d at 909.

## CONCLUSION

For the reasons stated above, we reform the Contempt Order to (1) strike that portion of the order ordering Crystal to obtain a release of "all other liens" on the two properties and (2) strike section II of the Contempt Order, which deals with "Violations 3 and 4." The remaining portions

of the order are valid and enforceable. *In re Anascavage*, 131 S.W.3d 108, 112 (Tex. App.—San Antonio 2004, orig. proceeding) ("an appellate court may strike offending portion of contempt order and otherwise deny relief"). Therefore, in all other respects, Crystal's petition for writ of habeas corpus is denied, and we remand Crystal back to the custody of the Kendall County, Texas county jail.

Irene Rios, Justice